# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| PRIME HYDRATION LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-cv-01260-L |
| | § | |
| RYAN GARCIA, | § | |
| | § | |
| Defendant. | § | |

---

## DEFENDANT RYAN GARCIA'S MOTION TO DISMISS AND BRIEF IN SUPPORT

---

**BLANK ROME LLP**

Barrett R. Howell
TX Bar No. 24032311
200 Crescent Court, Suite 1000
Dallas, TX 75201

Craig Weiner (*pro hac vice forthcoming*)
NY Bar No. 2468239
Reena Jain (*pro hac vice forthcoming*)
NY Bar No. 5218862
1271 Avenue of the Americas
New York, NY 10020

*Counsel for Defendant Ryan Garcia*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

FACTUAL BACKGROUND...................................................................................3

ARGUMENT............................................................................................................4

 A. Federal Rule of Civil Procedure 12(b)(6) Requires Dismissal of the Claims..........4

  1. Legal Standard .......................................................................................4

  2. The Defamation Claim (Count I) Should Be Dismissed ............................5

   a. Prime does not sufficiently allege the statements are defamatory assertions of fact. ............................................................5

    i. The challenged statements are opinion, not fact. .................5

    ii. Even if the statements are factual, they are not false. ..........9

   b. Prime does not sufficiently allege the requisite degree of fault.....11

    i. Prime is a public figure. ....................................................11

    ii. Prime does not sufficiently allege actual malice................11

   c. Prime does not sufficiently allege actual damages. .......................14

  3. The Business Disparagement Claim (Count II) Should Be Dismissed......15

  4. The Lanham Act False Advertising Claim (Count III) Should Be Dismissed .................................................................................16

   a. The statements did not occur in commercial advertising...............17

   b. The statements are not false or misleading. ..................................18

   c. The statements did not materially deceive Prime's consumers. ....18

   d. The statements did not injure Prime. .............................................19

  5. The Common Law Unfair Competition Claim (Count IV) Should Be Dismissed .................................................................................19

  6. The Unjust Enrichment Claim (Count V) Should Be Dismissed .............20

 B. The Texas Citizens Participation Act Requires Dismissal of the State Law Claims (Counts I–II, IV–V) .......................................................21

  1. The state law claims are based on Garcia's exercise of his right of free speech..................................................................22

  2. Prime does not meet its burden under the TCPA for its state law claims..22

  3. *Klocke v. Watson* should not preclude application of the TCPA.............23

 C. Garcia Should Be Awarded His Attorneys' Fees and Costs..................................24

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC, Inc. v. Gill,*
    6 S.W.3d 19 (Tex. App.—San Antonio 1999, pet. denied) ....................................6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................4, 5, 18

*Associated Press v. Cook,*
    17 S.W.3d 447 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ...........................13

*Avila v. Larrea,*
    394 S.W.3d 646 (Tex. App.—Dallas 2012, pet. denied) ......................................6

*Baker v. DeShong,*
    821 F.3d 620 (5th Cir. 2016) ......................................................................24

*Bandstra v. Covenant Reformed Church,*
    913 N.W.2d 19 (Iowa 2018) .........................................................................7

*Barker v. Hurst,*
    No. 01-17-00838-CV, 2018 WL 3059795 (Tex. App.—Houston [1st Dist.]
    June 21, 2018, no pet.).............................................................................14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................4, 18

*Best Glide Aviation Survival Equip., Inc. v. Tag-Z, LLC,*
    No. 1:23-cv-1080-DAE, 2024 WL 3488129 (W.D. Tex. July 19, 2024) ...............18

*Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.,*
    389 F. Supp. 3d 507 (S.D. Tex. 2019) ..........................................................20

*Broughty v. Bouzy,*
    No. 22-6458, 2024 WL 1739866 (D.N.J. Apr. 22, 2024)......................................8

*Casstevens v. Smith,*
    269 S.W.3d 222 (Tex. App.—Texarkana 2008, pet. denied) ...............................21

*Chapman v. Commonwealth Land Title Ins. Co.,*
    814 F. Supp. 2d 716 (N.D. Tex. 2011) ...........................................................20

*Cinel v. Connick,*
    15 F.3d 1338 (5th Cir. 1994) ........................................................................5

*Clapper v. Am. Realty Investors, Inc.*,
  2019 WL 5865709 (N.D. Tex. Nov. 7, 2019).......................................................20

*Clifford v. Trump*,
  818 Fed. App'x 746 (9th Cir. 2020) ..................................................................24

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ..............................................................................5

*Cuba v. Pylant*,
  814 F.3d 701 (5th Cir. 2016) ............................................................................23

*Dallas Morning News, Inc. v. Tatum*,
  554 S.W.3d 614 (Tex. 2018)................................................................................5

*El Paso Times, Inc. v. Trexler*,
  447 S.W.2d 403 (Tex. 1969)..............................................................................13

*Encompass Office Solutions, Inc. v. Ingenix, Inc.*,
  775 F. Supp. 2d 938 (E.D. Tex. 2011) ..............................................................16

*Forbes Inc. v. Granada Biosciences, Inc.*,
  124 S.W.3d 167 (Tex. 2003)..............................................................................15

*Ganske v. Mensch*,
  480 F. Supp. 3d 542 (S.D.N.Y. 2020)..................................................................8

*Gold v. Harrison*,
  962 P.2d 353 (Haw. 1998) ..................................................................................7

*Hancock v. Chi. Title Ins. Co.*,
  635 F. Supp. 2d 539 (N.D. Tex. 2009) ..............................................................20

*Harvest House Publishers v. The Local Church*,
  190 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)....................7

*Hearst Corp. v. Skeen*,
  159 S.W.3d 633 (Tex. 2005)..............................................................................12

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
  832 S.W.2d 39 (Tex. 1992)................................................................................21

*Hurlbut v. Gulf Atl. Life Ins. Co.*,
  749 S.W.2d 762 (Tex. 1987)........................................................................15, 16

*I Love Omni, LLC v. Omnitrition Int'l, Inc.*,
  No. 3:16-CV-2410-G, 2017 WL 3086035 (E.D. Tex. Mar. 31, 2011) ...................16

iv

*Jacobus v. Trump*,
   51 N.Y.S.3d 330 (Sup. Ct. N.Y. Cnty. 2017), *aff'd*, 156 A.D.3d 452 (N.Y.
   App. Div. 2017) ...................................................................................8, 9

*Klocke v. Watson*,
   936 F.3d 240 (5th Cir. 2019) ...........................................................23, 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)...............................................................................19

*Lilith Fund for Reprod. Equity v. Dickson*,
   662 S.W.3d 355 (Tex. 2023)...................................................................5

*In re Lipsky*,
   460 S.W.3d 579 (Tex. 2015)..................................................................23

*MCW, Inc. v. Badbusinessbureau.com, L.L.C.*,
   No. 3:02-CV-2727-G, 2004 WL 833595 (N.D. Tex. Apr. 19, 2004) ....................17

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990)...............................................................................5, 6

*Moore v. Waldrop*,
   166 S.W.3d 380 (Tex. App.—Waco 2005, no pet.)..................................14

*Moser v. Omnitrition Int'l Inc.*,
   No. 3:16-CV-2558-L, 2018 WL 1368789 (N.D. Tex. Mar. 16, 2018) ...........16, 19

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
   512 F.3d 137 (5th Cir. 2007) ................................................................16

*Neurodiagnostic Consultants, LLC v. Villalobos*,
   No. 03-18-00743-CV, 2019 WL 4892220 (Tex. App.—Austin Oct. 4, 2019,
   no pet.) ...............................................................................................14

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) ................................................................24

*Opaitz v. Gannaway Web Holdings, LLC*,
   454 S.W.3d 61 (Tex. App.—Amarillo 2014, pet. denied)........................12

*Peter Scalamandre & Sons, Inc. v. Kaufman*,
   113 F.3d 556 (5th Cir. 1997) ...............................................6, 11, 12, 13

*Pizza Hut, Inc. v. Papa John's Int'l., Inc.*,
   227 F.3d 489 (5th Cir. 2000) .............................................................17, 18

*Roth v. United Fed'n of Teachers*,
    87 N.Y.S.2d 603 (Sup. Ct. Kings Cnty. 2004)........................................................7

*S & H Indus. v. Selander*,
    932 F. Supp. 2d 754 (N.D. Tex. 2013) ..............................................................20

*Salinas v. Salinas*,
    No. 13-09-00421-CV, 2012 WL 4023331 (Tex. App.—Corpus Christi Sept.
    13, 2012, no pet.) ..............................................................................................6

*Schoellkopf v. Pledger*,
    778 S.W.2d 897 (Tex. App.—Dallas 1989, writ denied) .......................................19

*Seven-Up Co. v. Coca-Cola Co.*,
    86 F.3d 1379 (5th Cir. 1996) ..........................................................................17

*Snead v. Redland Aggregates Ltd.*,
    998 F.2d 1325 (5th Cir. 1993) ........................................................................11

*Snyder v. Phelps*,
    580 F.3d 206 (4th Cir. 2009) ............................................................................7

*Steinhilber v. Alphonse*,
    68 N.Y.2d 283 (1986) .......................................................................................8

*Stiles v. Trader Joe's Co.*,
    CV 16-04318 TJH (KSx), 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017)................10

*Sullivan v. Abraham*,
    488 S.W.3d 294 (Tex. 2016)............................................................................25

*Taylor Publ'g Co. v. Jostens, Inc.*,
    216 F.3d 465 (5th Cir. 2000) ..........................................................................20

*Teel v. Deloitte & Touche LLP*,
    No. 3:15-CV-2593-G, 2015 WL 9478187 (N.D. Tex. Dec. 29, 2015)...................16

*Walker v. Beaumont Indep. Sch. Dist.*,
    938 F.3d 724 (5th Cir. 2019) ..........................................................................13

*Walker v. Cotter Props., Inc.*,
    181 S.W.3d 895 (Tex. App.—Dallas 2006, no pet.)............................................21

*Willis v. Roche Biomedical Labs., Inc.*,
    61 F.3d 313 (5th Cir. 1995) ............................................................................12

**Statutes**

15 U.S.C. § 1117(a) ............................................................................................24

15 U.S.C. § 1125(a)(1)(B) ..............................................................................16, 17

Tex. Civ. Prac. & Rem. Code § 27.001(3) ........................................................22

Tex. Civ. Prac. & Rem. Code § 27.001(7) ........................................................22

Tex. Civ. Prac. & Rem. Code § 27.002 ............................................................21

Tex. Civ. Prac. & Rem. Code § 27.003(a) ..........................................................1

Tex. Civ. Prac. & Rem. Code § 27.005(b) ........................................................22

Tex. Civ. Prac. & Rem. Code § 27.005(c) ........................................................23

Tex. Civ. Prac. & Rem. Code § 27.009(a)(1) ....................................................24

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .......................................................1, 4

Tex. Const. art. 1, § 8 .........................................................................................5

Defendant Ryan Garcia respectfully submits this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Texas Citizens Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code § 27.003(a). The Complaint should be dismissed with prejudice and Garcia should be awarded his attorneys' fees and costs in defending against these baseless claims. This action is nothing more than an attempt to suppress Garcia's free speech on social media, including his personal opinions about Logan Paul, his company Prime Hydration LLC ("Prime"), and their products Prime Energy and Prime Hydration.

## PRELIMINARY STATEMENT

This action, which stems from a long-running feud between Ryan Garcia and Logan Paul, should be dismissed in its entirety. Unable to cope with Garcia's hyperbolic *opinions* on social media despite having invited such attention and comment, Logan Paul's company Prime is attempting to silence Garcia by asserting defamation and related claims. Prime, however, fails to plead the elements of any of those claims under the requisite pleading standard, and thus this brazen effort to squelch free speech should be rejected by this Court.

First, the defamation claim must be dismissed because Prime alleges none of the necessary elements: (i) Garcia's statements on social media in the context of a heated rivalry are non-actionable opinion, not fact; (ii) even if the statements were factual in nature, they are not false in light of widely publicized allegations of heightened levels of caffeine and forever chemicals in Prime products; (iii) based on its own allegations of growth and revenue, Prime is a public figure, but it does not plead that the allegedly false statements were made with actual malice; and (iv) under the defamation per quod standard, Prime fails to allege actual damages.

**Second**, the business disparagement claim must be dismissed because it is essentially identical to the defamation claim. Moreover, Prime does not allege "special damages"—*i.e.*, direct, pecuniary loss—as required under Texas law.

**Third**, the Lanham Act claim must be dismissed because Garcia's statements did not occur in commercial advertising. Garcia—a professional boxer—and Prime—a drink company—were not (and are not) commercial competitors. Nevertheless, the Complaint does not allege that Garcia attempted to entice consumers to purchase fight tickets instead of Prime's energy and hydration drinks, nor could he have.

**Fourth**, the unfair competition claim must be dismissed because it is wholly premised on the fatally deficient Lanham Act claim.

And **fifth**, the unjust enrichment claim must be dismissed because (i) unjust enrichment is not an independent cause of action under Texas law, and (ii) even if it were, the Complaint does not allege that Garcia was unjustly enriched at Prime's expense.

The Complaint is baseless—to be blunt, this action is nothing more than an attempt to make the ebulliently controversial Garcia shut up. Indeed, Prime has not been damaged because of Garcia's words on social media. And in any event, Garcia already publicly lamented "the fight that we're [Garcia and Logan Paul are] going through because I've known the family for years, bro," while taking a sip of Prime Hydration and stating "that's just bomb as f***, bro."[1] Accordingly, this Court should dismiss the Complaint in its entirety and award Garcia his attorneys' fees and costs.

---

[1] *See* Ana Paula Saenz (@anapaulasaenzoficialgm), TikTok (May 28, 2024), https://www.tiktok.com/@anapaulasaenzoficialgm/video/7373993786382257409.

## FACTUAL BACKGROUND

Ryan Garcia is a twenty-six-year-old professional boxer from California. *See* Compl. ¶ 2. In addition to his boxing career, Garcia purportedly "'use[s] social media to gain leverage and then give the fans what they want[]' by drumming up controversy on the Internet." *Id.* ¶ 26. He has allegedly "been involved in multiple public controversies," including with other boxers. *Id.* ¶ 27. Indeed, after a falling out between Ryan Garcia and Logan Paul—a social media influencer, professional boxer, and Prime's creator, owner, and spokesperson—the two have been locked in a yearslong feud. *See id.* ¶¶ 2, 60, Ex. A.

Prime, in its own words, is "a beloved world-renown [sic] brand that develops hydration drinks, energy drinks, and hydration sticks. … Customers love Prime's bold, thirst-quenching flavors because they refresh, replenish, and refuel. Prime is one of the fastest growing beverage brands in history, generating over 1.2 billion dollars in revenue in 2023 alone." *Id.* ¶ 1. However, in the past year, Prime has been slapped with two class action lawsuits and calls for the FDA to investigate both Prime Hydration and Prime Energy. In one class action, the plaintiffs allege heightened levels of caffeine in Prime Energy, claiming Prime Energy "target[s] children and adolescents despite their high concentration of caffeine"; Prime Energy has been "banned or restricted … due to [its] caffeine content exceeding legal limits, or otherwise being deemed unsafe for children to consume"; and "Side effects for kids consuming caffeine could include … seizures." Appendix ("App.") 2–20 (Am. Comp., *Vera v. Prime Hydration LLC*, No. 1:24-cv-02657-KPF (S.D.N.Y. May 7, 2024), Dkt. No. 12). And in another class action, the plaintiffs allege forever chemicals in Prime Hydration, claiming "Plaintiff's testing has revealed that [Prime Hydration] contains per- and polyfluoralkyl substances ("PFAS"), … a group of synthetic, man-made, chemicals known to be harmful to both humans and the environment." App. 22–63 (Am.

Comp., *Castillo v. Prime Hydration LLC*, No. 3:23-cv-03885-AMO (N.D. Cal. Oct. 13, 2023), Dkt. No. 26). Both class actions remain ongoing.

At issue in this action are statements that Garcia allegedly made "about Prime, its products and its team" on his personal social media accounts and, in one instance, on a third-party, YouTube-based podcast. *See id.* ¶¶ 28–35. While Prime selectively quotes certain of Garcia's words in the Complaint, Prime cannot divorce a few words from their greater context: lengthy, hyperbolic rhetoric made on social media, including X Spaces (f/k/a Twitter Spaces), Instagram stories, TikTok, and YouTube. *See id.* ¶ 52. And watching the social media recordings cited in the Complaint in their entirety, it is abundantly clear from the entire context of those videos that Prime does not have a cause of action for defamation (or any other tort) against Garcia.

## ARGUMENT

### A. Federal Rule of Civil Procedure 12(b)(6) Requires Dismissal of the Claims

#### 1. Legal Standard

In assessing a Rule 12(b)(6) motion, a court must follow a two-pronged approach. <u>First</u>, the court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor must the court "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted). The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). <u>Second</u>, assuming the veracity of well-pled factual allegations, the court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. There is, however, no plausibility "where the well-pleaded facts do not permit the court to infer

4

more than the mere possibility of misconduct." *Id.* In making this determination, the court may rely upon "documents that a defendant attaches to a motion to dismiss … if they are referred to in the plaintiff's complaint and are central to [the] claim," *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation omitted), as well as "matters of public record," *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Prime's failure to meet this basic pleading standard dooms its Complaint.

### 2.    The Defamation Claim (Count I) Should Be Dismissed

Despite cherry-picking opinionated sound bites and posts on social media, Prime fails to state a cause of action for defamation. "To prevail on a claim of defamation, a plaintiff must prove (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 362 (Tex. 2023) (citation omitted). Prime does not sufficiently allege that Garcia made a defamatory assertion of fact about the company and its products, let alone with the requisite degree of fault (here, actual malice). This Court should thus dismiss the defamation claim with prejudice.

### a.    Prime does not sufficiently allege the statements are defamatory assertions of fact.

### i.    The challenged statements are opinion, not fact.

As an initial matter, Garcia's statements are protectable, non-actionable statements of opinion. *See* Tex. Const. art. 1, § 8; *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). This, in itself, dooms the defamation claim. In examining whether a statement is an opinion, courts follow a two-part test: (i) "statements that are not verifiable as false are not defamatory"; and (ii) "even when a statement is verifiable, it cannot give rise to liability if the entire context in which it was made discloses that it was not intended to assert a fact." *Dallas Morning News, Inc. v. Tatum*,

5

554 S.W.3d 614, 639 (Tex. 2018).

    <u>First</u>, the challenged statements are not objectively verifiable facts. "The use of a term that is 'by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder' or 'a loose and figurative term employed as a metaphor or hyperbole' constitutes a protected expression of opinion." *Avila v. Larrea*, 394 S.W.3d 646, 659 (Tex. App.—Dallas 2012, pet. denied) (citation omitted). A statement that is nothing more than rhetorical hyperbole is not actionable as defamation. *See Milkovich*, 497 U.S. at 20; *see also ABC, Inc. v. Gill*, 6 S.W.3d 19, 30 (Tex. App.—San Antonio 1999, pet. denied) ("'Rhetorical hyperbole' is 'extravagant exaggeration' 'employed for rhetorical effect.'" (citation omitted)).

    This Court should hold that as a matter of law the challenged statements are nonactionable opinion. For example, the statements "horrible chemicals"; "poison the kids"[2]; "your kid can be in danger"; "These are little kids really getting hurt"[3]; "It's going to kill your guy's brains [and] mess up your guy's liver"; "that hurt you big time"; and "it's killing you" (Compl. ¶¶ 29, 31, 33) are hyperbole, not objectively verifiable facts. *See, e.g.*, *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 562–63 (5th Cir. 1997) (in the statement "the people of Texas are being poisoned," the "figurative reference to 'poison' is hyperbolic, but exaggeration does not equal defamation"); *Salinas v. Salinas,* No. 13-09-00421-CV, 2012 WL 4023331, at *1, 3 (Tex. App.—Corpus Christi Sept. 13, 2012, no pet.) (the statement "five hundred … of our babies were lost … and some of

---

[2] The word "cyanide" is interchangeable with "poison," but in any event, asking whether or not "there's cyanide in Prime Energy Drinks" is clearly a question, not an assertion of fact. *See* Compl. ¶ 29; *see also* Fight Hub TV, YouTube (March 12, 2024), https://www.youtube.com/watch?v=a8sFmmGjCM8&t=361s (cited in Compl. ¶ 29) ("there's cyanide in Prime Energy Drinks, can can somebody confirm that?").

[3] The statement children are having "seizures" was based on "proof" from "a lot of nurses." Compl. ¶¶ 31–32.

you will be judged for the way you have stolen and lied and killed" is not defamatory).[4]

Similarly, the statement "working for Satan" (Compl. ¶ 35) is "nothing more than exaggerated hyperbole." *See, e.g.*, *Roth v. United Fed'n of Teachers*, 87 N.Y.S.2d 603, 611 (Sup. Ct. Kings Cnty. 2004) ("A statement such as 'Principal from Hell' or 'Satan' is nothing more than exaggerated hyperbole."). As for the statement "devil worshippers" (Compl. ¶ 35), that is "not actionable because the truth or falsity of the statement depends upon one's religious beliefs." *See, e.g.*, *Harvest House Publishers v. The Local Church*, 190 S.W.3d 204, 212 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("being labeled a 'cult' is not actionable"); *Snyder v. Phelps*, 580 F.3d 206, 226 (4th Cir. 2009) (the statements that parents "raised their son 'for the devil,' and taught him to 'defy his Creator'" are "simply 'loose, figurative, or hyperbolic language' not connoting actual facts about [the son] or his parents"). And finally, any characterization of children being "tied down," "burnt," and "raped" *by Prime* (Compl. ¶ 35) is figurative rhetoric that reasonable minds would not take to be a factual assertion that Prime had committed such a crime.[5] *See Gold v. Harrison*, 962 P.2d 353, 361 n.6 (Haw. 1998) ("Cases in other jurisdictions have also held that the use of the word 'rape' or 'rapist' was rhetorical hyperbole." (collecting cases)).[6]

---

[4] *See also* App. 68 (Opinion and Order, *Herbalife Int'l of Am., Inc. v. Twitter, Inc.*, No. 15 L 7373 (Cir. Ct. Cook Cnty. Nov. 20, 2015)) ("The words 'poison,' 'toxic,' and 'unregulated,' while having readily understood meanings, can be used … in imprecise and colloquial ways so as to convey a hyperbolic meaning."); *see, e.g.*, *id.* 68–69 (Tweets stating that "Herbalife products 'will be recalled because they are toxic'" and "people are being 'poisoned' around the world by Herbalife's 'toxic unregulated products'" are "protected opinion and not defamatory").

[5] Prime also alleges that Garcia claimed that "the Prime team is operating a 'human trafficking' ring," but the video cited in the Complaint does not include any such language. Compl. ¶ 34. In any event, "human trafficking" (in this context) is also figurative rhetoric.

[6] *See, e.g.*, *Gold*, 962 P.2d at 361 ("Because [the] Statement could not have reasonably been interpreted as stating actual facts about the Plaintiffs, i.e., that they were rapists, [the] Statement was rhetorical hyperbole and protected by the first amendment."); *see also, e.g.*, *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 48–49 (Iowa 2018) (the statement "Unless … he was holding a knife to her throat, it wasn't rape" is not actionable because a "consensus of understanding" does not exist as to the definition of rape).

And <u>second</u>, taking into consideration the entire context in which the challenged statements were made—on social media in the midst of a yearslong, public feud between Ryan Garcia and Logan Paul—a reasonable person would recognize the statements as opinion. As a threshold matter, the fact that Garcia made the challenged statements on social media means a reasonable person would understand his statements to convey opinion, not definitive fact. *See Broughty v. Bouzy,* No. 22-6458, 2024 WL 1739866, at *4 (D.N.J. Apr. 22, 2024) ("Twitter [is] a public forum where a reasonable reader will expect to find many more opinions than facts."); *Ganske v. Mensch,* 480 F. Supp. 3d 542, 545, 553 (S.D.N.Y. 2020) ("If the Internet is akin to the Wild West, … Twitter is, perhaps, the shooting gallery, where verbal gunslingers engage in prolonged hyperbolic crossfire."); *Jacobus v. Trump,* 51 N.Y.S.3d 330, 339 (Sup. Ct. N.Y. Cnty. 2017) ("The culture of Internet communications, as distinct from that of print media such as newspapers and magazines, has been characterized as encouraging a 'freewheeling, anything-goes writing style.'" (citation omitted)), *aff'd,* 156 A.D.3d 452 (N.Y. App. Div. 2017).[7]

Garcia also made the statements amid a long-running, highly publicized rivalry between him and Logan Paul. *See* Compl. ¶ 60 ("[Garcia] used to but no longer likes the Prime team, and that he originally thought they were cool but now no longer cares about Prime." (cleaned up)). That further indicates that the statements are opinion. *See Steinhilber v. Alphonse,* 68 N.Y.2d 283, 294 (1986) ("even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an 'audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole'" (citation

---

[7] *See also Jacobus*, 51 N.Y.S.3d at 340 ("comments made on television talk shows, given the 'give and take' of the show, and the 'spirited' verbal exchanges between the host and guest, and the 'at times heated' 'interplay with audience members,' are deemed nonactionable opinion" (citation omitted)).

omitted)). Moreover, as set forth in the Complaint, Garcia purportedly "'use[s] social media to gain leverage and then give the fans what they want[]' by drumming up controversy on the Internet." Compl. ¶ 26. And "Garcia has been involved in multiple public controversies," including with other boxers. *Id.* ¶ 27. Viewing the challenged statements in context, they are obviously opinion, not statements of fact. *See, e.g.*, *Jacobus*, 51 N.Y.S.3d at 342–43 (in the context of "Trump's regular use of Twitter to circulate his positions and skewer his opponents and others who criticize him," "a reasonable reader would recognize [Trump's Tweets] as opinion, even if some of the statements, viewed in isolation, could be found to convey facts").

Each of the challenged statements fails at least one part of the test—verifiability or context—and are thus they are non-actionable opinion. This alone is grounds for dismissal of the defamation claim.

### ii.      Even if the statements are factual, they are not false.

Even if the challenged statements were factual in nature, the defamation claim must still fail because Prime does not plead sufficient facts to support the falsity element. Prime simply alleges that the challenged statements are "false"; lists a few (but not all) of the ingredients in Prime Hydration (but not Prime Energy); and suggests that Garcia should conduct an "investigation" and "test[]" Prime's products. Compl ¶¶ 53–56. Prime's conclusory allegations of falsity, and attempt to shift the burden to Garcia, are insufficient to support its defamation claim. In any event, any allegations of falsity are contradicted by legal proceedings against Prime. In one class action, alleging heightened levels of caffeine in Prime Energy, the complaint states:

> The Products have generated controversy due to Defendant's marketing campaign, which has been criticized for *targeting children* and adolescents despite their high concentration of caffeine. Several countries, jurisdictions, and primary and secondary schools have banned or restricted the Products due to their caffeine content exceeding legal limits, or otherwise being *deemed unsafe for children to consume*.

There is no proven safe dose of caffeine for children. *Side effects for kids consuming caffeine could include rapid or irregular heartbeats, headaches, seizures, shaking, stomach upset and adverse emotional effects on mental health.*

App. 5–6 (Am. Comp., *Vera v. Prime Hydration LLC*, No. 1:24-cv-02657-KPF (S.D.N.Y. May 7, 2024), Dkt. No. 12) (emphases added). In another class action, alleging forever chemicals in Prime Hydration, the complaint states:

> *Prime's viral marketing campaign has made the Product extremely popular with children and teens*, who make up a large percentage of the brand's 40 million social media followers.
>
> Plaintiff's testing has revealed that *the Product contains per- and polyfluoralkyl substances ("PFAS")*, … a group of synthetic, man-made, chemicals known to be harmful to both humans and the environment.
>
> PFAS chemicals are known to negatively impact the human body, including, but not limited to, decreased fertility, developmental effects or delays in children, increased risk of *cancers*, *liver damage*, increased risk of asthma and thyroid disease, adverse impacts on the immune system, interference with hormones, and increased cholesterol levels.
>
> Human epidemiology studies have found associations between PFOA [a PFAS] exposure and effects on the immune system, the cardiovascular system, human development (e.g., decreased birth weight), and cancer. The most sensitive non-cancer effect and the basis for the updated health advisories for PFOA is *suppression of vaccine response in children*.

App. 23, 27, 36, 45 (*Castillo v. Prime Hydration LLC*, No. 3:23-cv-03885-AMO (N.D. Cal. Oct. 13, 2023), Dkt. No. 26) (emphases added). And Senator Chuck Schumer, in calling for the Federal Drug Administration (FDA) to investigate both products, noted: "Physicians across the country … say 200 milligrams is a huge amount of caffeine that can have an adverse impact on the health of children." App. 73.[8] The substantial truth of the challenged statements (even if they were factual)

---

[8] This Court may rely on the attached letter from Senator Chuck Schumer to FDA Commissioner, Dr. Robert Califf, which is available at https://www.democrats.senate.gov, because it is a matter of public record. *See, e.g.*, *Stiles v. Trader Joe's Co.*, CV 16-04318 TJH (KSx), 2017 WL 3084267, at *2 (C.D. Cal. Apr. 4, 2017) (granting request for judicial notice of a "letter from various members of the United States Congress to the FDA commissioner").

defeats the defamation claim.

**b.** **Prime does not sufficiently allege the requisite degree of fault.**

This Court should also dismiss Prime's defamation claim because it does not sufficiently allege that Garcia published the challenged statements with the requisite degree of fault—actual malice—based on Prime's status as a public figure.

**i.** **Prime is a public figure.**

Based on the allegations in the Complaint, Prime is a public figure and thus the defamation claim fails because Prime does not meet the actual malice standard. In determining whether a corporation is a public figure, the factors to consider include: (1) "the notoriety of the corporation to the average individual in the relevant geographical area is relevant"; (2) "the nature of the corporation's business"; and (3) "the frequency and intensity of media scrutiny that a corporation normally receives." *See Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1329 (5th Cir. 1993). The rationale behind this test is that public figure corporations "invite attention and comment" and are less "vulnerable to injury." *Id.* at 1329 (citation omitted). Prime alleges that it is "a beloved world-renown brand" and "one of the fastest growing beverage brands in history, generating over 1.2 billion dollars in revenue in 2023 alone." Compl. ¶ 1. Moreover, Prime touts Logan Paul—a celebrity—as its creator, owner, and spokesperson. *See id.* ¶ 2, Ex. A. Prime is a company familiar to consumers and thus has attained public figure status. *See Snead*, 998 F.2d at 1329 ("Prominent consumer goods makers or merchants, as well as consumer service corporations, are much more likely to attain public figure status.").

**ii.** **Prime does not sufficiently allege actual malice.**

Because Prime is a public figure, it is required to plead that Garcia made the challenged statements with actual malice. *See Scalamandre*, 113 F.3d at 560. Prime, however, fails to do so.

The actual malice standard requires a plaintiff to plead that the defendant published the statement either "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* (quoting *New York Times v. Sullivan,* 376 U.S. 254, 279–80 (1964)). As for "reckless disregard," a plaintiff must plead that the defendant "entertained serious doubts as to the truth of the [statement] at the time it was published." *Hearst Corp. v. Skeen,* 159 S.W.3d 633, 637 (Tex. 2005). "Proving actual malice carries a high burden for a plaintiff." *Opaitz v. Gannaway Web Holdings, LLC*, 454 S.W.3d 61, 68 (Tex. App.—Amarillo 2014, pet. denied); *see also Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 317 (5th Cir. 1995) ("Malice is not implied or presumed from the mere fact of the publication, nor may it be inferred alone from the character or vehemence of the language used, nor found from the falsity of the statement alone." (citation omitted)).

Prime's allegations, either alone or taken together, fail to meet this high pleading standard. While the Complaint alleges "Garcia knows his statements are false, but maliciously espouses them anyway" and "Defendant is defaming Prime out of malice and with reckless disregard to the truth or falsity of his statements" (Compl. ¶¶ 36, 60), such allegations are wholly conclusory.[9] There are no well-pleaded factual allegations that Garcia knew his statements were false or that he entertained serious doubts as to their truth. The speculative allegations that "Garcia cannot possibly believe …"; "He has no basis to claim …"; and "His statements … are pure fabrication" (*id.* ¶ 36) do not equate actual malice; indeed, Prime conflates falsity with actual malice. Nonetheless, Garcia stated he has "proof from nurses" (*id.*) and from legal proceedings against Prime, and any failure to investigate such information or misinterpretation of such information does not constitute actual

---

[9] Prime contradicts itself and also alleges that Garcia stated: "I've only said true things" and "It's the truth." Compl. ¶ 39.

malice. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 755 (5th Cir. 2019) ("Neither a failure to investigate fully nor an understandable misinterpretation of ambiguous facts constitutes actual malice."); *see also El Paso Times, Inc. v. Trexler*, 447 S.W.2d 403, 406 (Tex. 1969) ("Failure to investigate the truth or falsity of a statement before it is published has been held insufficient to show actual malice. Negligence or failure to act as a reasonably prudent man is likewise insufficient.").

Moreover, the allegations that "[Garcia] has admitted online that part of the reason he is making these statements is because he used to but no longer likes the Prime team, and that he originally thought they were cool but now no longer cares about Prime," or that he is "trolling" Prime, do not evidence actual malice. Compl. ¶¶ 38, 42, 60 (cleaned up). On the contrary, the Fifth Circuit, applying Texas law, has emphasized that the actual malice standard is not "bad motive" or "ill will." *See Walker*, 938 F.3d at 755 ("the constitutional focus is on the defendant's attitude toward the truth, not his attitude toward the plaintiff" (citation omitted)); *Scalamandre*, 113 F.3d at 561 ("Proof that a defendant spoke out of dislike, or with ill will towards another, also does not automatically meet the test of actual malice, even if his statements are shown to be false."); *see also Associated Press v. Cook*, 17 S.W.3d 447, 458–59 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("actual malice in defamation is a term of art that does not include ill will, evil motive, or spite").[10] The relevant state of mind is not whether the defendant dislikes the plaintiff; the relevant state of mind is whether the defendant knew or had reason to believe the statement was false. Prime does not allege any facts to support its contention that Garcia knew, or had reason to know, any

---

[10] To the extent Prime alleges "Garcia intends to 'start [his] own drink company'" (Compl. ¶ 38), "a profit motive does not strip communications of constitutional protections." *See Scalamandre*, 113 F.3d at 561. "That a defendant publishes statements anticipating financial gain … fails to prove actual malice." *Id.*

13

statement he made was false, notwithstanding his purported dislike of Prime and Logan Paul.

As such, Prime does not meet its heightened burden to plead that Garcia acted with actual malice and the defamation claim should be dismissed.

### c. Prime does not sufficiently allege actual damages.

The defamation claim fails for the additional reason that it does not sufficiently allege actual damages. Where the alleged statement does not constitute defamation per se, a plaintiff must plead actual damages. *See Neurodiagnostic Consultants, LLC v. Villalobos*, No. 03-18-00743-CV, 2019 WL 4892220, at *5 (Tex. App.—Austin Oct. 4, 2019, no pet.) ("If the statement is defamatory per quod, the plaintiff must plead and prove damages to prevail."); *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.) ("If a statement is slander *per quod*, the plaintiff must present proof of actual damages.").[11] In this action, where at least one (*if not more*) of the challenged statements does not constitute defamation per se (*see, e.g.*, "working for Satan" and "devil worshippers"), Prime is required to plead actual damages. Nevertheless, Prime merely alleges that: "Defendant's conduct has and continues to cause Prime harm in the form of damage to the goodwill that consumers have for its brand, reputational harm, lost sales from consumers who believe Garcia's statements are true, and costs for Prime to enforce its rights." Compl. ¶ 61. That is not sufficient to meet the pleading standard for defamation per quod.

Prime fails to sufficiently allege a single element of a defamation claim, and accordingly its claim against Garcia should be dismissed with prejudice.

---

[11] *See also Barker v. Hurst*, No. 01-17-00838-CV, 2018 WL 3059795, at *7 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) ("If the court must resort to innuendo or extrinsic evidence to determine whether a statement is defamatory, the remark, if defamatory at all, can only constitute defamation per quod and requires proof of injury and damages.").

### 3. The Business Disparagement Claim (Count II) Should Be Dismissed

Where Prime's business disparagement claim is no different than its defamation claim, it too should be dismissed, especially because Prime fails to allege "special damages." Under Texas law, to state a claim for business disparagement, a plaintiff must allege: "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)). "Proof of special damages is an essential part of the plaintiffs' cause of action for business disparagement. The requirement goes to the cause of action itself and requires that plaintiff 'establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales.'" *Hurlbut*, 749 S.W.2d at 767 (citation omitted). Prime's conclusory allegations cannot overcome this motion to dismiss.

As explained above, Prime does not allege that Garcia published false and disparaging information about Prime or its products, let alone with malice. *See* Section A.2, *supra*. For this reason alone, the business disparagement claim should be dismissed.

In any event, the Complaint only includes conclusory allegations of "special damages." Prime contends that:

> Defendant's statements have, in fact, caused pecuniary loss to Prime's business. Prime's growth and sales are a direct correlation of its reputation in the market for great tasting and functional products and the goodwill which it has painstakingly developed with consumers. Defendant's statements to his over 20 million followers, and the many millions who hear of these statements after they are amplified through the media, have hurt Prime's sales and damaged the value of its business.

Compl. ¶ 67. Those allegations—despite their length—are threadbare and fall well short of the direct, pecuniary loss that Texas law requires to demonstrate special damages. Indeed, Prime fails

to allege "*specific* lost sales," let alone specific lost sales resulting from Garcia's statements. *See Hurlbut*, 749 S.W.2d at 767 (emphasis added); *see also Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 147 (5th Cir. 2007) (plaintiff must allege "specific economic loss"). Without any specific allegations supporting the existence of special damages, the Complaint fails to plausibly state a claim for business disparagement. *See, e.g.*, *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 959 (E.D. Tex. 2011) (granting motion to dismiss because allegation plaintiff has "suffer[ed] lost profits and lost goodwill/business reputation" not sufficient to plead special damages); *I Love Omni, LLC v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2410-G, 2017 WL 3086035, at *2 (E.D. Tex. Mar. 31, 2011) (granting motion to dismiss because allegation plaintiff has "suffered special damages, including, lost income, associated with lost business relationships and lost sales" not sufficient to plead special damages); *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *6 (N.D. Tex. Dec. 29, 2015) (granting motion to dismiss because allegation plaintiff has "suffer[ed] economical loss" not sufficient to plead special damages).[12]

Accordingly, this Court should dismiss the business disparagement claim with prejudice.

### 4. The Lanham Act False Advertising Claim (Count III) Should Be Dismissed

Prime's attempt to paint statements by Garcia on his personal social media accounts and a third-party podcast as false advertising under the Lanham Act is without merit. For a federal false advertising claim, 15 U.S.C. § 1125(a)(1)(B), a plaintiff must plead:

> (1) A false or misleading statement of fact about a product; (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) The deception is material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and

---

[12] *See also, e.g.*, *Moser v. Omnitrition Int'l Inc.*, No. 3:16-CV-2558-L, 2018 WL 1368789, at *4 (N.D. Tex. Mar. 16, 2018) (Lindsay, J.) (granting motion to dismiss because plaintiffs did not sufficiently allege special damages).

(5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l., Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). The alleged misrepresentation must occur in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Prime does not, however, satisfy the Lanham Act.

### a. The statements did not occur in commercial advertising.

As an initial matter, Prime does not allege that the purported misrepresentations occurred in "commercial advertising or promotion." Long-standing precedent in this circuit holds that, in order to constitute "commercial advertising or promotion," the challenged communication must be: (i) "commercial speech"; (ii) "by a defendant who is in commercial competition with plaintiff"; (iii) "for the purpose of influencing consumers to buy defendant's goods or services"; and (iv) "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996) (citation omitted). This Court need not inquire any further than the first three elements.

With respect to the first and third elements, there is no allegation that the statements at-issue proposed a commercial transaction. The conclusory allegations that Garcia made the statements in an attempt to "boost engagement with his online social media channels and further monetize his personal brand" and "on information to belief, to sell tickets to his fights" (Compl. ¶ 45) are tenuous at best, particularly when the challenged statements made no mention of a fight for which tickets were available for purchase. *See id.* ¶¶ 28–35. Nevertheless, there is no allegation that Garcia attempted to influence consumers to purchase "tickets to his fights" *rather than* Prime's drink products. *See, e.g.*, *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. 3:02-CV-2727-G, 2004 WL 833595, at *17 (N.D. Tex. Apr. 19, 2004) (granting motion to dismiss Lanham Act false advertising claim because, *inter alia*, "there is no commercial attempt to entice consumers to

switch from the services offered by [plaintiff] to the services offered by the defendants").

Perhaps even more fatal to the Lanham Act claim, Prime does not and cannot satisfy the second element because Garcia is not in commercial competition with Prime and the Complaint does not allege otherwise. The speculative allegation that "Garcia *intends* to 'start [his] own drink company'" (Compl. ¶ 38 (emphasis added)) is of no consequence.

### b. The statements are not false or misleading.

As explained above, Prime does not allege that Garcia published false or misleading statements of fact about Prime Energy or Prime Hydration. *See* Section A.2, *supra*. The statements by Garcia are non-actionable opinion. Such general statements of opinion cannot support a cause of action for false advertising. *See Pizza Hut*, 227 F.3d at 496 ("general statements of opinion cannot form the basis of Lanham Act liability"). And to the extent they are factual statements, they are substantially true.

### c. The statements did not materially deceive Prime's consumers.

Prime does not allege that the statements deceived potential consumers nor that the deception was material. The Complaint simply parrots those elements: "On information and belief, Defendant's statements have actually deceived, or have a tendency to deceive, a substantial segment of Prime's customers and/or potential customers. The deception is material because it is likely to influence the purchasing decisions of Prime's customers." *Compare* Compl. ¶ 71, *with Pizza Hut*, 227 F.3d at 495. Such unadorned factual assertions are inadequate under the *Iqbal* and *Twombly* pleading standard. *See, e.g.*, *Best Glide Aviation Survival Equip., Inc. v. Tag-Z, LLC*, No. 1:23-cv-1080-DAE, 2024 WL 3488129, at *6 (W.D. Tex. July 19, 2024) (granting motion to dismiss Lanham Act false designation of origin claim because plaintiff did not "specifically allege" how customers were materially deceived).

#### d. The statements did not injure Prime.

Similarly, Prime does not allege that the statements injured the company. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014) ("To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."). The Complaint merely alleges that: "Defendant's false and misleading statements and omissions damage Prime's reputation, harm the goodwill it has developed for its brand with consumers, negatively impact its sales, and negatively impact the enterprise value of its business." Compl. ¶ 73. These allegations are not only conclusory, but they are directly contradicted by the allegations that: "Prime is a beloved world-renown brand" and "Customers love Prime[]." *Id.* ¶ 1. Accordingly, the allegations of injury are disentitled to the presumption of truth and cannot support a Lanham Act claim. *See, e.g.*, *Moser*, 2018 WL 1368789, at *5 (Lindsay, J.) (granting motion to dismiss Lanham Act false advertising claim because "[p]laintiffs' only allegation of injury is that [defendant's] 'commercial statements are false or misleading and likely to deceive which in turn caused material injury to [p]laintiffs'").

Each of the foregoing reasons is fatal to Prime's Lanham Act claim, and thus this Court should dismiss the claim with prejudice.

### 5. The Common Law Unfair Competition Claim (Count IV) Should Be Dismissed

Because the Lanham Act claim should be dismissed (*see* Section A.4, *supra*), and the unfair competition claim is wholly premised on the Lanham Act claim (Compl. ¶ 81), the unfair competition claim should also be dismissed. *See Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied) ("Without some finding of an independent substantive tort or other illegal conduct, we hold that liability cannot be premised on the tort of 'unfair

competition.'"); *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) ("the illegal act … must at least be an independent tort"). After all, unfair competition is not a stand-alone cause of action.

Even if the unfair competition claim is premised on another tort, those torts—and thus the unfair competition claim—are also subject to dismissal. *See* Sections A.2, A.3, *supra*. In any event, the dismissal of the Lanham Act claim still mandates dismissal of its corresponding common law claim because such claims are analyzed together. *See S & H Indus. v. Selander*, 932 F. Supp. 2d 754, 763 (N.D. Tex. 2013) ("Unfair competition claims under Texas law are analyzed under the same standard as claims under the Lanham Act."); *Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, 389 F. Supp. 3d 507, 519 (S.D. Tex. 2019) ("Courts in the Fifth Circuit generally analyze a Lanham Act deceptive advertising claim and a Texas unfair competition claim together." (citation omitted)). The common law unfair competition claim should therefore be dismissed with prejudice.

### 6.     The Unjust Enrichment Claim (Count V) Should Be Dismissed

The unjust enrichment claim also fails on its face. As a threshold matter, unjust enrichment is not an independent cause of action under Texas law. *See Clapper v. Am. Realty Investors, Inc.*, 2019 WL 5865709, at *9 (N.D. Tex. Nov. 7, 2019) (Lindsay, J.) ("Texas law does not recognize an independent cause of action for unjust enrichment."); *Chapman v. Commonwealth Land Title Ins. Co.*, 814 F. Supp. 2d 716, 725 (N.D. Tex. 2011) (Lindsay, J.) ("Texas courts of appeals have consistently held that unjust enrichment is not an independent cause of action but instead a theory upon which an action for restitution may rest." (citation omitted)); *Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 561 (N.D. Tex. 2009) ("Texas law does not afford an independent cause of action for unjust enrichment."). The unjust enrichment claim must be dismissed on this basis alone.

Even if the claim were legally cognizable, Prime fails to allege that it is entitled to restitution under an unjust enrichment theory of recovery. Recovery under the theory of unjust enrichment is limited to situations in which "one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). "The doctrine applies the principles of restitution to disputes where there is no actual contract, based on the equitable principle that one who receives benefits that would be unjust for him or her to retain ought to make restitution." *Casstevens v. Smith*, 269 S.W.3d 222, 229–30 (Tex. App.—Texarkana 2008, pet. denied); *see also Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.) (Unjust enrichment is "the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay."). Prime, however, does not allege either that Garcia was unjustly enriched at Prime's expense or an implied or quasi-contractual relationship in which Garcia could have received such an undue benefit. Therefore, the unjust enrichment claim should be dismissed with prejudice.

**B.      The Texas Citizens Participation Act Requires Dismissal of the State Law Claims (Counts I–II, IV–V)**

In addition to failing to state a claim against Garcia for which relief can be granted, the state law claims should be dismissed pursuant to the TCPA. The TCPA is an anti-SLAPP statute designed to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law." Tex. Civ. Prac. & Rem. Code § 27.002. The TCPA provides "a court shall dismiss a legal action against the moving party if the moving party demonstrates that the legal action is based on or is in response to … the party's exercise of … the right of free speech," unless the nonmoving party can meet its burden of "clear and specific evidence" of "a prima facia case for each essential

element of the claim in question." *Id.* § 27.005(b), (c). Because the state law claims are based on Garcia's exercise of his right of free speech, and Prime does not (and cannot) establish clear and specific evidence of a prima facie case for those claims, this Court should dismiss those claims pursuant to the TCPA.

1. **The state law claims are based on Garcia's exercise of his right of free speech.**

The statements by Garcia on his personal social media accounts and a third-party podcast— upon which the state law claims are based—are protected free speech. The TCPA defines the "exercise of the right of free speech" broadly as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). And a "matter of public concern" includes "a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity"; "a matter of political, social, or other interest to the community"; or "a subject of concern to the public." *Id.* § 27.001(7). As set forth in the Complaint, the statements by Garcia purportedly relate to matters of public concern—namely: (i) Prime, a "world-renown brand" and "one of the fastest growing beverage brands in history, generating over 1.2 billion dollars in revenue in 2023 alone"; and (ii) Logan Paul, a social media influencer and professional boxer. Compl. ¶¶ 1–2,28–35. Such statements fall squarely within the TCPA's protections for free speech. *See id.* § 27.001(7). The state law claims are thus subject to dismissal under the TCPA. *See id.* § 27.005(b).

2. **Prime does not meet its burden under the TCPA for its state law claims.**

Prime does not and cannot establish clear and specific evidence sufficient to state a prima facie case for defamation, business disparagement, unfair competition, or unjust enrichment. After all, Prime has no clear and specific evidence to support claims it cannot adequately plead. *See* Sections A.2, A.3, A.5, A.6, *supra*. Because Prime cannot carry its burden under the TCPA, its

state law claims should be dismissed. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).

### 3. *Klocke v. Watson* should not preclude application of the TCPA.

*Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019), does not prohibit this Court from dismissing the state law claims pursuant to the TCPA. In *Klocke*, the Fifth Circuit held: "the TCPA does not apply to diversity cases in federal court," reasoning "[i]n contrast to the federal procedural requirements, the TCPA imposes additional requirements that demand judicial weighing of evidence." *Id.* at 242, 246. At the time of the *Klocke* decision, the statutory burden-shifting framework was as follows: (i) first, the movant needed to demonstrate by a preponderance of the evidence that the action is based on the movant's exercise of the listed rights; (ii) then, the nonmovant needed to establish by clear and specific evidence a prima facie case for each essential element of the claim in question; and (iii) then, the movant needed to establish by a preponderance of the evidence each essential element of a valid defense. *Id.* at 244. Less than a month *after* that decision, however, the Texas Legislature amended the TCPA and removed its "preponderance of the evidence" requirement for dismissal. *See* Acts 2019, 86th Leg., ch. 378 (H.B. 2730), § 3, eff. Sept. 1, 2019.

And while the "clear and specific evidence" of "a prima facie case" requirement remains, it is "more like a pleading requirement than a summary judgment standard." *Cuba v. Pylant*, 814 F.3d 701, 711 (5th Cir. 2016). This standard should not be conflated with the "clear and convincing evidence" standard. Indeed, "a litigant's evidentiary burden in a TCPA motion may be satisfied by either detailed pleading or supporting affidavits: A party need not provide 'evidence' in the traditional sense if the pleadings are sufficiently clear." *Id.*; *see also In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (a prima facie case requires the "minimum quantum of evidence necessary to support an inference that the allegation of fact is true" (citation omitted)). Even if the Federal Rules

and the TCPA were in conflict at the time of the *Klocke* decision, that is no longer the case; they can exist side by side without direct collision.[13] Accordingly, the TCPA should apply to the state law claims in this action.

### C.  Garcia Should Be Awarded His Attorneys' Fees and Costs

Upon dismissal of the Complaint (whether in whole or in part), Garcia should be awarded his attorneys' fees and costs pursuant to the Lanham Act and the TCPA.

Pursuant to the Lanham Act, this Court may award reasonable attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). In the Fifth Circuit, "an exceptional case is one where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Because Prime's Lanham Act claim is completely devoid of merit (*see* Section A.4, *supra*), Garcia is entitled to his attorneys' fees in successfully defending against that claim.

Moreover, the TCPA mandates an award of attorneys' fees and costs to a successful movant. Section 27.009(a)(1) provides: "if the court orders dismissal of a legal action under this chapter, the court … shall award to the moving party court costs and reasonable attorney's fees

---

[13] *Cf. U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999) (concluding that the special motion to strike and availability of fees and costs provisions of California's anti-SLAPP statute apply in federal court because "these provisions and Rules 8, 12, and 56 can exist side by side each controlling its own intended sphere of coverage without conflict" (cleaned up)); *Clifford v. Trump*, 818 Fed. App'x 746, 747 (9th Cir. 2020) ("The district court correctly concluded under the *Erie* doctrine that the motion to dismiss procedures of the [TCPA] apply in federal court. We have long held that analogous procedures in California's anti-SLAPP law apply in federal court, and the TCPA is indistinguishable from California's law in all material respects.").

24

incurred in defending against the legal action." *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) ("the TCPA requires an award of 'reasonable attorney's fees' to the successful movant"). Therefore, Garcia must be awarded his attorneys' fees and costs incurred in successfully defending against the state law claims.

## CONCLUSION

For the foregoing reasons, Garcia respectfully requests this Court grant his motion to dismiss; dismiss the claims against him with prejudice; and award him his attorneys' fees and costs in defending against this meritless action. It is apparent that Prime filed the Complaint in an effort to stifle Garcia's free speech and distract from the legal proceedings against Prime concerning the chemical compositions of its products.

Dated: August 26, 2024  
      Dallas, Texas

Respectfully submitted,

**BLANK ROME LLP**

By: */s/ Barrett R. Howell*              
     Barrett R. Howell  
     TX Bar No. 24032311  
     200 Crescent Court, Suite 1000  
     Dallas, TX 75201  
     Tel.: (972) 850-1450  
     Fax: (972) 850-1451  
     barrett.howell@blankrome.com

     Craig Weiner (*pro hac vice forthcoming*)  
     NY Bar No. 2468239  
     Reena Jain (*pro hac vice forthcoming*)  
     NY Bar No. 5218862  
     1271 Avenue of the Americas  
     New York, NY 10020  
     Tel.: (212) 885-5000  
     Fax: (212) 885-5001  
     craig.weiner@blankrome.com  
     reena.jain@blankrome.com

     *Counsel for Defendant Ryan Garcia*