# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS,
### DALLAS DIVISION

| | | |
|---|---|---|
| **PRIME HYDRATION LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3-24-CV-01260-L** |
| | § | |
| **RYAN GARCIA,** | § | |
| | § | |
| **Defendant.** | § | |

---

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO MOTION TO DISMISS AND BRIEF IN SUPPORT

---

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/Herbert H. Finn*
Herbert H. Finn
FinnH@gtlaw.com
Illinois Bar No. 6205685
Patrick J. Owens
Patrick.Owens@gtlaw.com
Illinois Bar No. 6346324
77 W Wacker Dr. Suite 3100
Chicago, IL 60601
Tel: 312.456.8400
Fax: 312.456.8435

Daniel Elms
Dan.Elms@gtlaw.com
TX Bar No. 24002049
2200 Ross Avenue Suite 5200
Dallas, TX 75201
Tel: 214.665.3600
Fax: 214.665.3601

Michael Burshteyn
mburshteyn@gtlaw.com
CA Bar No. 295320
101 2nd Street, Ste. 2200
San Francisco, CA, 94105-3668
Tel: 415.590.5141
Fax: 415.707.2010

**ATTORNEYS FOR PLAINTIFF
PRIME HYDRATION LLC**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................1

II. FACTUAL BACKGROUND .........................................................................2

    A. Garcia developed a calculated plan to defame Prime and promote his competing business ventures at Prime's expense. ....................................2

    B. Garcia espouses knowingly false statements about Prime's products and personnel. ...............................................................................2

    C. Garcia's defamation campaign has and continues to harm Prime's business..........3

    D. Garcia's introduction of new facts beyond the Complaint is improper but does not change the Court's determination. ....................................4

III. LEGAL STANDARD.................................................................................4

IV. ARGUMENT ......................................................................................5

    A. Prime sufficiently pleads its defamation claim against Garcia. ..............................5

        1. Prime's Complaint plausibly alleges that Garcia published a multitude of verifiably false statements that defamed Prime. ...........................................6

        2. Garcia's knowing false statements are not protected opinion. ...................8

        3. Prime pleads the requisite level of fault.....................................11

        4. Prime does not need to but sufficiently pleads damages. .........................12

    B. Prime's business disparagement claim survives. ..............................................13

    C. Prime sufficiently pleads Garcia's violation of the Lanham Act...........................14

    D. Prime's unfair competition and unjust enrichment claims survive dismissal........15

    E. The Texas Citizens Participation Act has no application to this case...................17

    F. Garcia's reliance on a video and documents beyond the complaint should be stricken. ...............................................................................19

V. CONCLUSION...................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Heath*,
No. 6:16-CV-51 MHS-JDL, 2016 WL 7971294 (E.D. Tex. May 6, 2016),
*adopted by* 2016 WL 3033561 (E.D. Tex. May 27, 2016) ......................................................11

*Anderson v. Dallas Cnty.*,
No. 3:05-CV-1248-G, 2007 WL 1148994 (N.D. Tex. Apr. 18, 2007) ...................................20

*In re Anonymous Online Speakers*,
661 F.3d 1168 (9th Cir. 2011) ...........................................................................................10

*Baker v. DeShong*,
821 F.3d 620 (5th Cir. 2016) ..............................................................................................15

*Bayatfshar v. ARINC, Inc.*,
961 F. Supp. 2d 206 (D.D.C. 2013) ....................................................................................10

*Baylor Scott & White v. Project Rose MSO, LLC*,
633 S.W.3d 263 (Tex. App.—Tyler Aug. 30, 2021, pet. denied)..........................................16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................4

*Beneficient v. Gladstone*,
No. 6:23-CV-376-JDK, 2024 WL 2338256 (E.D. Tex. May 22, 2024)................................10

*Bentley v. Bunton*,
94 S.W.3d 561 (Tex. 2002)...........................................................................................5, 9, 12

*Lewis Bisgaard & Smith LLP v. Bitgood*,
No. 4:22-CV-03279, 2023 WL 2089248 (S.D. Tex. Feb. 16, 2023) ....................................18

*Bostic v. Daily Dot, LLC*,
No. 1:22-CV-158-RP, 2023 WL 2317789 (W.D. Tex. Mar. 1, 2023)...................................11

*Butowsky v. Folkenflik*,
No. 4:18-CV-442, 2019 WL 2518833 (E.D. Tex. Apr. 17, 2019),
*adopted by* 2019 WL 3712026 (E.D. Tex. Aug. 7, 2019).......................................................13

*Butowsky v. Folkenflik*,
No. 4:18-CV-442, 2019 WL 3712026 (E.D. Tex. Aug. 7, 2019) .....................................11, 13

*Cain v. Hearst Corp.*,
878 S.W.2d 577 (Tex. 1994)................................................................................................13

*Castro & Co., L.L.C. v. Polymath Inc.*,
No. 3:18-CV-678-L, 2019 WL 4246600 (N.D. Tex. Sept. 6, 2019).......................................15

*Chancey v. BASF*,
No. 23-40032, 2023 WL 6598065 (5th Cir. Oct. 10, 2023) ....................................................20

*Clemens v. McNamee*,
608 F. Supp. 2d 811 (S.D. Tex. 2009), *aff'd*, 615 F.3d 374 (5th Cir. 2010) ............................8

*Clifford v. Trump*,
818 F. App'x 746 (9th Cir. 2020) ...........................................................................................18

*Competitive Enter. Inst. v. Mann*,
150 A.3d 1213 (D.C. 2016) ................................................................................................9, 10

*Copeland v. Bonner*,
No. 3:13-CV-02440-P, 2014 WL 12780587 (N.D. Tex. Mar. 25, 2014) ...............................13

*Curran v. Philadelphia Newspapers, Inc.*,
546 A.2d 639 (Pa. Super. 1988)..............................................................................................12

*Curtis Publ'g Co. v. Butts*,
388 U.S. 130 (1967)..................................................................................................................12

*Dallas Morning News, Inc. v. Tatum*,
554 S.W.3d 614 (Tex. 2018).....................................................................................5-6, 8, 10

*Dallas Police & Fire Pension Sys. v. Alexander*,
No. 4:17-CV-631-ALM-KPJ, 2021 WL 4260494 (E.D. Tex. Sept. 20, 2021)................. 17-18

*De Boulle Diamond & Jewelry, Inc. v. Boulle, Ltd.*,
No. 3:12-CV-1462-L, 2015 WL 5033893 (N.D. Tex. Aug. 25, 2015)...................................15

*Elias v. Pilo*,
781 F. App'x 336 (5th Cir. 2019) ...........................................................................................16

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
258 F. Supp. 2d 576 (S.D. Tex. 2003) ....................................................................................19

*Franklin v. Apple Inc.*,
569 F. Supp. 3d 465 (E.D. Tex. 2021) ....................................................................................19

*Fridman v. Bean LLC*,
No. 17-2041 (RJL), 2019 WL 231751 (D.D.C. Jan. 15, 2019) ..............................................11

*Fringe Ins. Benefits, Inc. v. Beneco, Inc.*,
No. A-13-CV-034-AWA, 2015 WL 631181 (W.D. Tex. Feb. 11, 2015)................................15

*Gersten v. Newark Morning Ledger Co.*,
    52 N.J. Super. 152 (N.J. Super. L. 1958) ...............................................................8

*George v. SI Grp., Inc.*,
    36 F.4th 611 (5th Cir. 2022) ...............................................................................19

*Gertz v. Robert Welch, Inc.*,
    680 F.2d 527 (7th Cir. 1982) ...............................................................................12

*Glob. Plasma Sols. Inc. v. D. Zine Partners LLC*,
    No. 3:21-CV-00884-M, 2021 WL 12192074 (N.D. Tex. June 10, 2021) ............17

*Gold v. Harrison*,
    962 P.2d 353 (Haw. 1998) .....................................................................................7

*Golden Bear Distrib. Sys. of Texas, Inc. v. Chase Revel, Inc.*,
    708 F.2d 944 (5th Cir. 1983) .................................................................................8

*Guidry v. Am. Pub. Life Ins. Co.*,
    512 F.3d 177 (5th Cir. 2007) .................................................................................4

*Harrison v. Aztec Well Servicing Co.*,
    No. 1:20-CV-038-H, 2021 U.S. Dist. LEXIS 244798
    (N.D. Tex. Dec. 23, 2021) ......................................................................................8

*Hays v. Frost & Sullivan, Inc.*,
    No. SA-23-CV-01490-FB, 2024 U.S. Dist. LEXIS 146902
    (W.D. Tex. Aug. 16, 2024) ...................................................................................16

*Herbalife Int'l of Am., Inc. v. Twitter, Inc.*,
    No. 15 L 7373, 2015 Ill. Cir. LEXIS 14287 (Ill. Cir. Ct. Nov. 20, 2015) ................7

*Hilton v. Nicole Prause & Liberos*,
    No. SA-19-CA-755-JKP (HJB), 2019 WL 11553493
    (W.D. Tex. Nov. 26, 2019), *adopted by* 2019 WL 11553490
    (W.D. Tex. Dec. 11, 2019)....................................................................................18

*Jackson v. Pierre*,
    No. 18-603-SDD-RLB, 2019 WL 2866839 (M.D. La. July 2, 2019)....................18

*Klocke v. Watson*,
    936 F.3d 240 (5th Cir. 2019) ..........................................................................17, 18

*Le-Vel Brands, LLC v. Bland*,
    No. 3:19-CV-00154-L, 2019 WL 4735805 (N.D. Tex. Sept. 27, 2019).........4, 5, 17

*In re Lipsky*,
    460 S.W.3d 579 (Tex. 2015)................................................................................12

*Logan v. Burgers Ozark Country Cured Hams, Inc.*,
   263 F.3d 447 (5th Cir. 2001) ........................................................................14

*Lovelace v. Software Spectrum Inc.*,
   78 F.3d 1015 (5th Cir. 1996) ........................................................................19

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013) ........................................................................18

*Marquis v. OmniGuide, Inc.*,
   No. 3:09-CV-2092-D, 2011 WL 321112 (N.D. Tex. Jan. 28, 2011) .................13, 14

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ..................................................................................8, 9, 10

*Miller v. Stroman*,
   No. 1-19-CV-00475-ADA, 2020 WL 2494576 (W.D. Tex. May 14, 2020) ..........20

*MiMedx Grp., Inc. v. DBW Partners LLC*,
   No. 17-1925 (JDB), 2018 WL 4681005 (D.D.C. Sept. 28, 2018) .......................11

*Molzan v. Bellagreen Holdings, L.L.C.*,
   112 F.4th 323 (5th Cir. 2024) ......................................................................14

*Moore v. Waldrop*,
   166 S.W.3d 380 (Tex. App.—Waco 2005, no pet.)..........................................13

*United States ex rel. Newsham v Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) ........................................................................18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014)....................................................................................15

*Ollman v. Evans*,
   750 F.2d 970 (D.C. Cir. 1984) ........................................................................9

*Parker v. Spotify USA, Inc.*,
   569 F. Supp. 3d 519 (W.D. Tex. 2021)............................................................17

*Pep v. Newsweek, Inc.*,
   553 F. Supp. 1000 (S.D.N.Y. 1983)................................................................12

*Powell v. Dallas Morning News L.P.*,
   776 F. Supp. 2d 240 (N.D. Tex. Mar. 28, 2011), *aff'd*, 486 F. App'x 469 (5th
   Cir. 2012) ..................................................................................................19

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) ..........................................................................4

*Reliable Consultants, Inc. v. Earle*,
517 F.3d 738 (5th Cir. 2008) ................................................4

*Reneker v. Offill*,
No. 3:08-CV-1394-D, 2010 WL 1541350 (N.D. Tex. Apr. 19, 2010) ..................4

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) ................................................5

*Roth v. United Fed'n of Teachers*,
787 N.Y.S.2d 603 (Sup. Ct. Kings Cnty. 2004)..................................7

*In re S. Scrap Material Co.*,
541 F.3d 584 (5th Cir. 2008) ...............................................14

*Salinas v. Salinas*,
No. 13-09-00421-CV, 2012 WL 4023331 (Tex. App.—Corpus Christi-
Edinburg Sept. 13, 2012, no pet.) ..........................................7

*Sanders v. Walsh*,
162 Cal. Rptr. 3d 188 (Cal. Dist. Ct. App. 2013) ..........................10

*SB Int'l v. P.R. Jindal*,
No. 3:06-CV-1174-G, 2007 WL 1411042 (N.D. Tex. May 14, 2007)..............20

*Scott v. Atlas Fin. Holdings, Inc.*,
No. 3:20-CV-2825-M-BH, 2021 WL 4845779 (N.D. Tex. Oct. 18, 2021)..........16

*Scott v. Wollney*,
No. 3:20-CV-2825-M-BH, 2021 WL 4851852 (N.D. Tex. Sept. 10, 2021)..........16

*Scripps NP Operating, LLC v. Carter*,
567 S.W.3d 1 (Tex. App.—Corpus Christi-Edinburg 2016),
*aff'd*, 573 S.W.3d 781 (Tex. 2019) ........................................11

*Snyder v. Phelps*,
580 F.3d 206 (4th Cir. 2009) ...............................................7

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
No. 5:19-CV-243-H, 2020 WL 5500238 (N.D. Tex. Sept. 11, 2020) ............20

*St. Amant v. Thompson*,
390 U.S. 727 (1968)........................................................12

*Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*,
No. 3:18-CV-0587-N, 2019 WL 4860959 (N.D. Tex. Oct. 2, 2019) ...........13, 14

*Teleconference Sys. LLC v. Metaswitch Networks Corp.*,
    No. 6:18-CV-234-JDK, 2019 WL 6699820 (E.D. Tex. Feb. 5, 2019) .................................5

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d. Cir. 2007) .................................................................................15

*Turner v. KTRK Television, Inc.*,
    38 S.W.3d 103 (Tex. 2000) ...................................................................................11

*Unsworth v. Musk*,
    No. 2:18-CV-08048-SVW-JC, 2019 U.S. Dist. LEXIS 167626
    (C.D. Cal. May 10, 2019) ......................................................................................10

*US Dominion, Inc. v. Powell*,
    554 F. Supp. 3d 42 (D.D.C. 2021) ......................................................................8, 9

*Van Dyke v. Retzlaff*,
    781 F. App'x 368 (5th Cir. 2019) .........................................................................17

*Vandever LLC v. Intermatic Mfg.*,
    No. 3:11-CV-201-B, 2011 WL 4346324 (N.D. Tex. Sept. 16, 2011) ...................16

*Vill. Farms, L.P. v. Mastronardi Produce, Ltd.*,
    No. P-13-CV-57, 2014 WL 12492040 (W.D. Tex. Feb. 25, 2014) ................. 15-16

*Warren v. Fed. Nat'l Mortg. Assoc.*,
    932 F.3d 378 (5th Cir. 2019) ..................................................................................5

*Weyrich v. New Republic, Inc.*,
    235 F.3d 617 (D.C. Cir. 2001) ...............................................................................9

*Yohe v. Nugent*,
    321 F.3d 35 (1st Cir. 2003) .....................................................................................9

**Statutes**

Lanham Act ...............................................................................................................14, 15

Texas Citizens Participation Act .......................................................................15, 17, 18

**Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................4, 5, 14, 15, 17, 19

Fed. R. Civ. P. 12(f) .............................................................................................19

**Other Authorities**

Restatement (Second) of Torts § 573, cmt. g ..............................................................12

# I.     INTRODUCTION

Garcia's Motion and Brief in Support (Dkt. 10) ignores the Fifth Circuit's dismissal standard by attempting to introduce evidence outside the Complaint towards creating factual disputes at the initial pleading stage. Prime's allegations, accepted as true at this stage, clearly satisfy the pleading standard for defamation and the other causes of action.

Garcia announced his intent to defame Prime and destroy its business through multiple, unequivocal public statements. For months, he has engaged in a premeditated campaign to lie about Prime, its ingredients, and its personnel. Garcia declares that, among other things, Prime's products contain poison and horrible chemicals, including cyanide and ostarine. He states as fact that Prime's products harm kids and others by causing seizures while killing their brains and livers. Garcia announces that he has proof of these lies but refuses to disclose it. Garcia further propagandizes that Prime and its personnel are engaged in heinous sex crimes and satanic worship. Garcia maliciously distributes these lies for his own benefit and profit – promoting his own boxing career, his lucrative online brand, and a forthcoming competitive beverage company he is working on – all while knowingly costing Prime millions of dollars.

Now faced with the legal consequences of his conduct, Garcia asks this Court to believe he was just "acting" outrageous online. The Court should reject Garcia's baseless and self-serving attempt to shroud himself in the garb of opinion and hyperbole – especially in view of Garcia's repeated admissions to the contrary. Garcia's theory attempts to fundamentally rewrite this Circuit's defamation doctrine. His defense is that so long as the defamer pretends to be unhinged while spreading falsehoods, there are no grounds for defamation. This is not the law, nor should it be. Garcia knew what he was doing and should now be held accountable. He knew his statements were false, yet deliberately spread them to tens of millions of people for no reason except to harm Prime's business and boost his own.

## II.  FACTUAL BACKGROUND

**A.  Garcia developed a calculated plan to defame Prime and promote his competing business ventures at Prime's expense.**

Despite Garcia's claims, his statements are not mere hyperbole in the context of a celebrity feud or harmless Twitter trolling. This is not a situation of a farcical Ryan Reynolds/Hugh Jackman Twitter battle. On the contrary, Garcia is enacting a well-prepared strategy of defamation so he can "destroy Prime little by little" and "start [his] own drink company." (Dkt. 1, ¶¶ 6, 38.)

Apart from promoting a competing drink venture he is creating, Garcia also knowingly makes false statements about Prime to sell boxing tickets and to monetize his tens of millions of social media followers through clicks and views. (*Id.* ¶ 45.) He admitted in April 2024 that his defamatory campaign was part of a monthslong plan of making false statements about Prime to generate demand for his fight with Devin Haney. (*Id.* ¶¶ 37, 46.) Garcia's professed business model is to "use[] social media to gain leverage and then give the fans what they want." (*Id.* ¶ 26.) Here, he leverages social media channels, with over 20 million followers, to intentionally spread lies about Prime. (*Id.* ¶ 39.)

Garcia knows his statements are not mere hyperbole or opinion but defamatory content he intends to be taken as fact. When asked why he keeps defaming Prime, he responds that Prime "can . . . sue [him]," and that is something he welcomes. (*Id.* ¶¶ 7, 43.) Garcia will continue his plan by going out on a "limb" (*id.* ¶ 65) with a willingness "to talk about it every day." (*Id.* ¶ 58.)

**B.  Garcia espouses knowingly false statements about Prime's products and personnel.**

Garcia has flooded the Internet with intentional false statements about Prime and its personnel. Garcia's statements comprise at least 18 distinct, knowingly false claims:

| Category 1: False statements about Prime's product ingredients: | |
|---|---|
| Statement 1 | Prime's hydration products contain "horrible chemicals[.]" (*Id.* ¶¶ 3, 29, 33.) |
| Statement 2 | Prime's hydration products contain "poison[.]" (*Id.* ¶¶ 3, 29.) |

| Statement 3 | Prime's hydration products contain "cyanide." (*Id.* ¶¶ 3, 29.) |
| Statement 4 | Garcia "tested positive for ostarine" because he "drank [P]rime[.]" (*Id.* ¶ 30.) |

**Category 2: False statements about Prime's products' effects on children:**

| Statement 5 | Prime's hydration drink causes "seizures" in kids, based on "real proof" in Garcia's possession, which he did not disclose. (*Id.* ¶¶ 3, 31, 32, 39.) |
| Statement 6 | Prime puts kids "in danger if they keep drinking" it. (*Id.* ¶ 31; *see also id.* ¶ 3.) |
| Statement 7 | "[L]ittle kids" who drink Prime are "really getting hurt[.]" (*Id.* ¶ 31; *see also id.* ¶ 3.) |
| Statement 8 | "[A] lot of nurses are hitting me up, speaking to me, saying that they have seen firsthand what this drink does to kids." (*Id.* ¶ 32; *see also id.* ¶ 39.) |

**Category 3: False statements about Prime's products' effects on everyone:**

| Statement 9 | Prime's hydration drinks "are gonna kill your guys's brains[.]" (*Id.* ¶ 33.) |
| Statement 10 | Prime's hydration drinks will "mess up your guys's liver[.]" (*Id.* ¶ 33.) |
| Statement 11 | Prime's hydration drinks will "hurt you big time[.]" (*Id.* ¶ 33.) |
| Statement 12 | Prime's hydration drinks are "killing you." (*Id.* ¶ 33.) |

**Category 4: False statements about Prime's personnel:**

| Statement 13 | Prime's team is operating a "human trafficking" ring. (*Id.* ¶¶ 4, 34.) |
| Statement 14 | Prime's team "tied [children] up[.]" (*Id.* ¶ 35.) |
| Statement 15 | Prime's team "raped" "children[.]" (*Id.* ¶ 35.) |
| Statement 16 | Prime's team "burned them," referring to children. (*Id.* ¶ 35.) |
| Statement 17 | Prime's team are "devil worshipers[.]" (*Id.* ¶ 35.) |
| Statement 18 | Prime's team "work" with Satan. (*Id.* ¶ 35; *see also id.* ¶ 4.) |

Garcia's approach of lumping these statements together fails to support dismissal, as each of the 18 statements is distinct and independently actionable – regardless of categorization.

C.    **Garcia's defamation campaign has and continues to harm Prime's business.**

Each of Garcia's statements has damaged, and continues to damage, Prime. As designed by Garcia, (*see id.* ¶¶ 8, 36-38, 41-42, 44-46), each of his statements has cost Prime millions of dollars by destroying its brand equity, its goodwill with customers, and its reputation. (*See, e.g.*, *id.* ¶¶ 24, 42, 49.) Garcia's damage to Prime hurts its enterprise value, causing its equity to reduce in value. (*See, e.g.*, *id.* ¶¶ 48-50.) Prime has also suffered, and continues to suffer, direct pecuniary damage through millions of dollars in lost sales, as well as significant time and expense expended to address Garcia's lies. (*See, e.g.*, *id.* ¶¶ 61, 67, 73.)

Garcia proudly acknowledges that his false statements cause monetary harm – bragging that he has already cost Prime "millions" in revenue. (*Id.* ¶¶ 8, 42.) Garcia admits his intent is to "keep on bashing them," because it's his business strategy. (*Id.*) He is well aware of the damage caused, advising "anyone with stock in Prime to get out before it's to *[sic]* late." (*Id.* ¶ 49.)

**D.  Garcia's introduction of new facts beyond the Complaint is improper but does not change the Court's determination.**

Because Garcia knows Prime's allegations state a claim for defamation if taken as true, he improperly attempts to introduce extrinsic evidence outside the four corners of the Complaint. However, at this stage of the proceedings, the Court evaluates only the allegations and documents incorporated in the Complaint. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). Garcia can seek to introduce this evidence later, as part of a motion for summary judgment or at trial, but it cannot support his motion to dismiss. *Reneker v. Offill*, 2010 WL 1541350, at *6 (N.D. Tex. Apr. 19, 2010) (inappropriate for a court to "apply any particular factual finding from [another case] to this motion to dismiss"; instead, "[a]ny evidence . . . may be introduced at a later point, in particular, in a motion for summary judgment or at trial").

## III.  <u>LEGAL STANDARD</u>

In evaluating a Rule 12(b)(6) motion, the Court must accept "all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Le-Vel Brands, LLC v. Bland*, 2019 WL 4735805, at *1 (N.D. Tex. Sept. 27, 2019) (Lindsay, J.) (citing *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007)). The plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A cause of action meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement[.]'" *Le-Vel Brands, LLC*, 2019 WL 4735805, at *4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court, at this stage of the proceedings, does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable cause of action. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Where defamation allegations go beyond a "speculative level" and the Court can "reasonably infer" that a defendant is liable, then any other "matters presented are best suited for summary judgment or trial." *Le-Vel Brands, LLC*, 2019 WL 4735805, at *1, 4, 9 (denying motion to dismiss in a defamation case). "In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are 'viewed with disfavor and are rarely granted.'" *Teleconference Sys. LLC v. Metaswitch Networks Corp.*, 2019 WL 6699820, at *2 (E.D. Tex. Feb. 5, 2019) (quoting *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009)).

## IV. ARGUMENT

### A. Prime sufficiently pleads its defamation claim against Garcia.

To state a cause of action for defamation, Prime must plead that (1) Garcia published a false statement, (2) that defamed Prime, (3) with the requisite degree of fault regarding the truth of the statement, and (4) damages, unless the statement constitutes defamation *per se*. *Warren v. Fed. Nat'l Mortg. Assoc.*, 932 F.3d 378, 383 (5th Cir. 2019) (quoting *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017)). Statements are defamatory when they expressly or impliedly assert facts that are objectively verifiable and tend to damage reputation. *Bentley v. Bunton*, 94 S.W.3d 561, 580 (Tex. 2002). Claims of defamation by implication cover both the "gist" of the allegedly defamatory statements and implications reasonably taken from such statements. *Dallas Morning*

*News, Inc. v. Tatum*, 554 S.W.3d 614, 627 (Tex. 2018). Prime's Complaint satisfies all these elements.

1. **Prime's Complaint plausibly alleges that Garcia published a multitude of verifiably false statements that defamed Prime.**

Garcia cites out-of-context case law to suggest that his 18-plus defamatory statements were not knowingly false. He improperly lumps together all of Prime's allegations about his lies and asks the Court to determine, at this early stage of the proceedings, that they are mere hyperbole opinion and not verifiably false.

As a threshold issue, Garcia's brief is silent as to Statement No. 4. (*See supra* section II.B. (quoting Dkt. 1, ¶ 30).) Garcia claims that he tested positive for ostarine, a performance enhancing substance banned from the boxing league where he competes, because he drank Prime (implying that Prime contains ostarine). (*Id.*) This is verifiably false. Whether Prime contains ostarine can be determined by testing, just as testing identified ostarine in Garcia's bloodstream. In fact, Prime does not contain ostarine. (*See* Dkt. 1, ¶ 55.) This statement alone satisfies the defamation standard, as it spreads a falsehood that causes Prime's customers—especially those who are boxing fans, an important market for Prime—not to purchase its product. The Court should deny Garcia's Motion based solely for its failure to address Statement No. 4.

While Garcia pays lip service to some of the other 17 statements, he fails to explain why each of the statements is not verifiably false. Whether Prime contains "horrible chemicals," "poison," or "cyanide," (Category 1) are all things that can be objectively verified through analyzing Prime's ingredients. (*See supra* section II.B. (quoting Dkt. 1, ¶¶ 3, 29, 30, 33).) Prime beverage's impact on children (Category 2) and whether it causes "seizures," puts kids "in danger," causes kids to "get[] hurt", and whether nurses have "seen firsthand what this drink does to kids[]"

are all statements capable of verification through medical analysis, records, and reports[1]. (*See supra* section II.B. (quoting Dkt. 1, ¶¶ 3, 31, 32, 39).) Same with Prime's purported effect on others (Category 3) with respect to whether it is "gonna kill your guys's brains," "mess up your guys's liver," "hurt you big time," or is "killing you." (*See supra* section II.B. (quoting Dkt. 1,¶ 33).) The crimes that Garcia accuses Prime's personnel of committing (Category 4)—human trafficking, tying children up, rape, burning children—would all be verifiable, if they were true. (*See supra* section II.B. (quoting Dkt. 1, ¶¶ 4, 34, 35).) As would Garcia's statements about Prime's personnel worshiping the devil and working with Satan (Category 4). (*See supra* section II.B. (quoting Dkt. 1, ¶¶ 4, 35).)[2]

Garcia belatedly attempts to argue that even if his statements are verifiable, they are truthful based on two other early-stage lawsuits involving Prime and its products. (Dkt. 10, p. 17-19.) Ignoring that Garcia's arguments are improper, they are nothing more than an obviously self-

---

[1] This would include the numerous communications Garcia claims to have received from nurses.(*See* Dkt. 1, p. 9 n.31, p. 10 n.39.)

[2] The cases Garcia briefly cite to support his argument about hyperbolic language are all inapposite. Nearly all of the holdings of these cases arose in the context of intensive evidentiary inquiries far past the initial pleading stages. Most of them are outside this Circuit and Texas and are not binding on this Court. The language in those cases occurred in different contexts where the statements were hyperbolic, unlike here, where Garcia repeatedly insists that his statements are "true." *See, e.g.*, *Salinas v. Salinas*, 2012 WL 4023331, at *1, 3-4 (Tex. App.—Corpus Christi-Edinburg Sept. 13, 2012, no pet.) (private citizen addressing a mayor regarding pesticide plant where "the audience was intimately familiar" with the issues); *Roth v. United Fed'n of Teachers*, 787 N.Y.S.2d 603, 611 (Sup. Ct. Kings Cnty. 2004) (a teacher's group calling a "Principal from Hell" or Satan was exaggerated, unlike Garcia's statements where he claims Prime actually works *with* and worships Satan and the devil); *Snyder v. Phelps*, 580 F.3d 206, 226 (4th Cir. 2009) (church group's hysterical writing style found to be non-actionable); *Gold v. Harrison*, 962 P.2d 353, 355-56, 361-62 (Haw. 1998) (noting that saying "I'm being raped" *in the context of being on trial* was clear hyperbole); *Herbalife Int'l of Am., Inc. v. Twitter, Inc.*, 2015 Ill. Cir. LEXIS 14287, at *5 (Ill. Cir. Ct. Nov. 20, 2015) (where "poison" and "toxic" were used "imprecise[ly] and colloquial[ly]," unlike Garcia's precise statements defining the type of poison and toxic chemicals, they are hyperbolic).

serving after-the-fact excuse. Nothing in the Complaint, or even in the Motion, suggests that Garcia was aware of the lawsuits or ever saw any documents related to the lawsuits.[3]

### 2. Garcia's knowing false statements are not protected opinion.

Garcia's attempt to recast his intentionally false statements as opinion does not work. His statements – which he consistently characterized as "true" fact – meet none of the standards for opinion. Dismissing defamation claims at the pleadings stage based on opinion requires a finding that "no reasonable person could conclude" that the statements express or imply a verifiably false fact. *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 57 (D.D.C. 2021); *see also Powell*, 554 F. Supp. 3d at 58 ("The question, then, is whether a reasonable juror could conclude that [defendant]'s statements expressed or implied a verifiably false fact about [plaintiff]") (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20-21 (1990)). Prime easily satisfies the standard at this stage.[4]

First, Garcia's representations that he has proof via undisclosed facts (*e.g.*, nurses who purportedly told him things (Dkt. 1, ¶¶ 32, 36, 39) confirms that his statements are not merely

---

[3] Even if he had seen these documents, overstating allegations in other filings, which have not been proven and have not gotten past their own respective motions to dismiss, still constitutes defamatory false statements. *See, e.g.*, *Harrison v. Aztec Well Servicing Co.*, 2021 U.S. Dist. LEXIS 244798, at *42-43 (N.D. Tex. Dec. 23, 2021) (no litigation privilege where the person making statement has no relation to the judicial proceeding and does not possess evidentiary information relevant to it); *Gersten v. Newark Morning Ledger Co.*, 52 N.J. Super. 152, 153-55 (N.J. Super. L. 1958) (false allegations related to pending legal proceedings is "injurious to reputation" and sometimes cannot be corrected given people will "remember" only the "derogatory" description).

[4] Any ambiguity on the question of whether the statement is mere opinion or asserted fact requires that the Court deny Garcia's Motion and permit the case to proceed to discovery. *Golden Bear Distrib. Sys. of Texas, Inc. v. Chase Revel, Inc.*, 708 F.2d 944, 948 (5th Cir. 1983) ("[i]f a defamatory meaning may exist . . . the court must allow the jury to determine whether an ordinary reader would perceive the statement as defamatory"); *Tatum*, 554 S.W.3d at 632 ("[C]ourts sometimes determine that a statement is capable of at least one defamatory and at least one non-defamatory meaning. When that occurs, 'it is for the jury to determine whether the defamatory sense was the one conveyed.'"); *Clemens v. McNamee*, 608 F. Supp. 2d 811, 826 (S.D. Tex. 2009), *aff'd*, 615 F.3d 374 (5th Cir. 2010) (if "a publication is of ambiguous or doubtful import . . . the jury must determine its meaning").

unverifiable opinions, but rather verifiable facts. Garcia's representations about existing undisclosed facts portrays to a reasonable person that he has verifiable support for his statements. Stated differently, opinions cannot be *proven*. Further, these assertions of proof make it so a reasonable person can examine the basis for the alleged statements, taking them out of the realm of non-actionable opinion. *Yohe v. Nugent*, 321 F.3d 35, 41 (1st Cir. 2003) (a "defamation [claim] may still be sustained where an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion'"); *Bentley*, 94 S.W.3d at 584 (defendant "repeatedly insisted that evidence" he had not disclosed supported his claims); *Ollman v. Evans*, 750 F.2d 970, 983 (D.C. Cir. 1984) (claiming one "possesses knowledge of damaging, undisclosed facts" takes the statement out of opinion); *Powell*, 554 F. Supp. 3d at 59 (statement that speaker had undisclosed "evidence from [the] mouth of the guy who founded" plaintiff-company "admit[ting that] he can change a million votes, no problem at all" constituted actionable defamatory statement).

Second, Garcia's accusations about committing heinous sex crimes also take his statements outside of opinion. *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624-25 (D.C. Cir. 2001) (citing cases holding that accusations that an individual committed crimes of blackmail or treason would imply a verifiably false fact); *Milkovich*, 497 U.S. at 20-21 (statements implying individual "perjured himself in a judicial proceeding" contained "provably false factual connotation").

Third, the Court should not permit Garcia to transform his verifiably false statements into opinion merely because he couched the false statements as hyperbole. It is not enough to cry "this is my opinion," as Garcia attempts, to sidestep a defamation claim. *Milkovich*, 497 U.S. at 18-19 ("Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'"); *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1244 (D.C. 2016) ("[T]he

First Amendment gives no protection to an assertion 'sufficiently factual to be susceptible of being proved true or false' *even if* the assertion is expressed by implication in 'a statement of opinion'") (emphasis in original).

Fourth, even if Garcia's statements reflect his opinions, they are actionable because he bases them on incorrect, incomplete, or erroneous "facts" which he knows are false. *Competitive Enter. Inst.*, 150 A.3d at 1246 ("Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.") (quoting *Milkovich*, 497 U.S. at 18-19); *Bayatfshar v. ARINC, Inc.*, 961 F. Supp. 2d 206, 216-17 (D.D.C. 2013) ("Even if a statement is one of opinion, it is still actionable 'if it has an explicit or implicit factual foundation,' as this makes it 'objectively verifiable'") (quoting *Washington v. Smith*, 80 F.3d 555, 556 (D.C. Cir. 1996)). Garcia claims that because he published his statements on the Internet, there is no expectation of accuracy and the "culture" of the Internet excuses his defamation. He points to no authority for his proposition. On the contrary, Texas courts require analyzing the context regardless of the forum where someone posts statements. *See, e.g.*, *Tatum*, 554 S.W.3d at 639; *Beneficient v. Gladstone*, 2024 WL 2338256, at *11 (E.D. Tex. May 22, 2024).[5]

Fifth, Garcia's arguments that some of his videos might have opinions do not move any of the 18 defamatory statements into the category of opinion. Where opinion mixes with verifiable

---

[5] Other courts also disagree with Garcia's novel theory that defaming someone on Twitter or elsewhere in social media provides immunity. *See, e.g.*, *Unsworth v. Musk*, 2019 U.S. Dist. LEXIS 167626, at *11 (C.D. Cal. May 10, 2019) ("Of course, Twitter is replete with opinions—but it also is an important source for facts."); *Sanders v. Walsh*, 162 Cal. Rptr. 3d 188, 196 (Cal. Dist. Ct. App. 2013) ("Nor do[es]" California case law provide "that online commentary is pure opinion per se. Where specific, false factual allegations are published and they cause damage, a defamation action will lie."); *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("online speech stands on the same footing as other speech—there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech").

false statements, the false statements still constitute defamation. *Scripps NP Operating, LLC v. Carter*, 567 S.W.3d 1, 20-21 (Tex. App.—Corpus Christi-Edinburg 2016), *aff'd*, 573 S.W.3d 781 (Tex. 2019) (even when "certain parts of [an article] may be fairly characterized as opinions," a defamation claim will still lie where "those opinions were supplemental to the underlying factual allegations"); *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) ("a plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way").

### 3. Prime pleads the requisite level of fault.

Garcia's attempts to paint Prime as a public figure should be rejected. *MiMedx Grp., Inc. v. DBW Partners LLC*, 2018 WL 4681005, at *6 (D.D.C. Sept. 28, 2018) (denying motion to dismiss a defamation cause of action because plaintiff pleaded it was a private figure and there was no "obligation to anticipate in its complaint the need to plead facts to defend against defendants' assertions that it is a public figure").[6] Even if Prime is a public figure for these purposes, which Prime does not concede, the Complaint sufficiently pleads actual malice. Courts in the Fifth Circuit impose a low bar for pleading actual malice. *Butowsky v. Folkenflik*, 2019 WL 3712026, at *4, 9 (E.D. Tex. Aug. 7, 2019) (plaintiff need only show a plausible inference of malice at motion to dismiss stage); *Allen v. Heath*, 2016 WL 7971294, at *8 (E.D. Tex. May 6, 2016), *adopted by* 2016 WL 3033561 (E.D. Tex. May 27, 2016) (denying motion to dismiss after "prima facie showing" of malice); *Bostic v. Daily Dot, LLC*, 2023 WL 2317789, at *11 (W.D. Tex.

---

[6] *See also Fridman v. Bean LLC*, 2019 WL 231751, at *4 (D.D.C. Jan. 15, 2019) ("[W]here a plaintiff has not alleged facts establishing public figure status and 'may be able to produce a factual basis for a finding that the plaintiff should be considered a private figure with regard to the' allegedly defamatory statements, 'there is no basis for imposing on the plaintiff an obligation to anticipate in the complaint the need to plead facts to defend against defendants' assertion that the plaintiff is a public figure.'").

Mar. 1, 2023) (denying motion to dismiss because "[a]t this stage, [plaintiff] has shown more than 'scant assertions' that the [d]efendants acted with malice").

Here, Garcia's injurious motive *is* a factor for malice, despite his baseless assertions otherwise. *Bentley*, 94 S.W.3d at 596 (While "lack of care or an injurious motive in making a statement is not alone proof of actual malice," they "are factors to be considered."). His dislike of Prime and some of its founders is relevant to malice because it drives his disregard for the truth, given that his publicly stated goal is to destroy Prime. (*See* Dkt. 1, ¶¶ 7, 8, 42, 43, 60, 65.) Courts look at a variety of other factors for malice as well—all of which are present here:

- "[I]nherently improbable assertions and statements made on information that is obviously dubious." *Bentley*, 94 S.W.3d at 596; *accord St. Amant v. Thompson*, 390 U.S. 727, 733 (1968). "Reliance on a questionable source[.]" *Pep v. Newsweek, Inc.*, 553 F. Supp. 1000, 1003 (S.D.N.Y. 1983).

- "[A]bsence of any factual basis." *Curran v. Philadelphia Newspapers, Inc.*, 546 A.2d 639, 642 (Pa. Super. 1988). "Purposeful avoidance of the truth[.]" *Bentley*, 94 S.W.3d at 596.

- Making statements relating to a pre-conceived "story line." *See, e.g.*, *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 539 (7th Cir. 1982).

- Lack of expertise in the subject matter coupled with strong statements. *See, e.g.*, *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 158 (1967).

**4.      Prime does not need to but sufficiently pleads damages.**

Garcia spends pages of his brief on the malice standard, but ignores the issue of defamation *per se*. Garcia assumes, without any explanation, argument, or authority, that his statements are not defamatory *per se*. He is wrong. Because Garcia disparaged Prime's "goods" through his lies in a "manner that implies the manufacturer or vendor is dishonest, fraudulent, or incompetent," all 18 of his statements are defamation *per se*. *See, e.g.*, Restatement (Second) of Torts § 573, cmt. g. (using example of a statement that a butcher knowingly sells meat that is tubercular); *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015) (statements accusing an energy company of being a polluter

were defamatory *per se*). Further, Garcia's allegations of criminal conduct, including statements about rape and sex trafficking, also support a defamation *per se* finding. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex. 1994); *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.). Because Garcia's statements constitute defamation *per se*, Prime is not required to plead special damages. *See Copeland v. Bonner*, 2014 WL 12780587, at *7 (N.D. Tex. Mar. 25, 2014) (defamatory per se statements actionable without injury allegation); *see also Butowsky v. Folkenflik*, 2019 WL 2518833, at *14 (E.D. Tex. Apr. 17, 2019), *adopted by* 2019 WL 3712026 (E.D. Tex. Aug. 7, 2019) (denying motion to dismiss defamation claims because plaintiff alleged the statements injured business and reputation).

Regardless, Prime does plead special damages, alleging that Garcia's lies caused Prime to (1) lose millions in sales, (2) lose enterprise value, incur significant reputational harm, and suffer damage to its brand and goodwill, and (3) incur costs to correct the record. (*See, e.g.*, Dkt. 1, ¶¶ 24, 42, 49, 61, 67, 73.)

**B.     Prime's business disparagement claim survives.**

To state a claim for business disparagement, Prime needs only to allege that Garcia (1) published false and disparaging information about Prime, (2) with malice, (3) without privilege, (4) that resulted in special damages to Prime. *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 2019 WL 4860959, at *3 (N.D. Tex. Oct. 2, 2019) (quoting *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)). Garcia's arguments on this cause of action are duplicative and addressed herein above.

To the extent Garcia hangs his hat on the issue of damages, Prime's harm allegations are more than sufficient. (*See supra* section IV.A.4. (citing Dkt. 1, ¶¶ 24, 42, 49, 61, 67, 73).) No direct evidence of pecuniary loss is necessary at the motion to dismiss stage. *Marquis v. OmniGuide, Inc.*, 2011 WL 321112, at *7 (N.D. Tex. Jan. 28, 2011) ("OmniGuide is not obligated at the

pleading stage to produce evidence of direct pecuniary loss; it need only plead 'enough facts to state a claim to relief that is plausible on its face.'"); *see also, e.g.*, *Super-Sparkly Safety Stuff, LLC*, 2019 WL 4860959, at *3 (finding business disparagement count sufficiently plead damages by "stating that [counter defendant's] communications caused at least one of its existing customers to stop buying its products"). To the extent it is reviewed, that issue is meant for discovery. *See OmniGuide, Inc.*, 2011 WL 321112, at *7; *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) ("[Rule 12(b)(6)]…simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.") (quotation marks omitted).

## C.    Prime sufficiently pleads Garcia's violation of the Lanham Act.

For its Lanham Act claim, Prime must only allege that (1) Garcia made a false statement of fact about its product in a commercial advertisement, (2) the statement actually deceived or has a tendency to deceive a substantial segment of its audience, (3) the deception is likely to influence a purchasing decision, (4) Garcia caused the false statement to enter interstate commerce, and (5) Prime has been or is likely to be injured as a result. *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 462 (5th Cir. 2001); *accord Molzan v. Bellagreen Holdings, L.L.C.*, 112 F.4th 323, 334 (5th Cir. 2024) (reciting elements and reversing district court's 12(b)(6) dismissal of the false advertising claim).

Prime has already addressed the issue of falsity and injury. (*See supra* section IV.A.1.-2, IV.A.4.) As to whether Garcia's statements are commercial advertising—Prime alleges repeatedly that it is. (*See, e.g.*, Dkt. 1, ¶¶ 38, 44-46.) Garcia's personal brand is itself a business, as he makes money when his social media posts get viewership traction. He is also promoting his forthcoming competing drink company. (*Id.* ¶ 38.)

Prime also sufficiently alleges that Garcia's statements materially deceive consumers. People are less likely to buy Prime because Garcia scares them into thinking it is poison and that

its personnel are criminals. At this stage, falsity alone is sufficient for the material deception element. *See, e.g.*, *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d. Cir. 2007) ("When an advertisement is shown to be literally or facially false, consumer deception is presumed") (quotation marks omitted).

In support of his request for fees, Garcia offers one sentence of argument: "Prime's Lanham Act claim is completely devoid of merit." (Dkt. 10, p. 24.) However, Prime's Lanham Act claims are sufficient to survive a Rule 12(b)(6) challenge. Notably, Garcia does not offer a single legal authority suggesting that an award of attorneys' fees can or should be based on a Rule 12(b)(6) dismissal of a Lanham Act claim.[7] Moreover, even if the Court were to dismiss Prime's Lanham Act claim, such early dismissal does not justify an award of attorneys' fees.[8] "The mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on the arguments that were frivolous or in bad faith." *De Boulle Diamond & Jewelry, Inc. v. Boulle, Ltd.*, 2015 WL 5033893, at *9 (N.D. Tex. Aug. 25, 2015) (Lindsay, J.) (quoting *Stragent, LLC v. Intel Corp.*, 2014 WL 6756304, at *4 (E.D. Tex. Aug. 6, 2014)); *accord Castro & Co., L.L.C. v. Polymath Inc.*, 2019 WL 4246600, at *6 (N.D. Tex. Sept. 6, 2019) (Lindsay, J.).

**D.    Prime's unfair competition and unjust enrichment claims survive dismissal.**

Dismissing Prime's unfair competition claim at this stage would be improper, as Prime alleges multiple independent torts to support that claim, including violations of the Lanham Act and business disparagement. *See, e.g.*, *Fringe Ins. Benefits, Inc. v. Beneco, Inc.*, 2015 WL 631181, at *6-7 (W.D. Tex. Feb. 11, 2015); *Vill. Farms, L.P. v. Mastronardi Produce, Ltd.*, 2014 WL

---

[7] Further, Garcia's alternative basis for a fee award under the TCPA also fails. As discussed herein, binding Fifth Circuit authority confirms that the TCPA has no application in federal court.

[8] In *Baker v. DeShong,* the court did not award attorneys' fees, but instead remanded the issue to be reevaluated under the *Octane Fitness* framework. *Baker*, 821 F.3d 620, 625 (5th Cir. 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)).

12492040, at *2 (W.D. Tex. Feb. 25, 2014); *Vandever LLC v. Intermatic Mfg.*, 2011 WL 4346324, at *6 (N.D. Tex. Sept. 16, 2011). Notably, none of the authorities that Garcia relies upon was decided based upon a Rule 12 motion. Rather, they were decided after a jury verdict (*Schoellkopf* and *Taylor Publishing*) or after summary judgment briefing (*S&H Industries* and *Boltex*). This is not surprising because a court cannot know whether a viable unfair competition claim exists until the independent tort(s) supporting it is fully adjudicated.

As to unjust enrichment, although Texas state and federal courts have acknowledged confusion about whether it is an independent cause of action, *see, e.g.*, *Elias v. Pilo*, 781 F. App'x 336, 338, 338 n.3 (5th Cir. 2019), that confusion has been eliminated by more recent decisions. First, and most importantly, the Fifth Circuit operates on the assumption that "unjust enrichment is an independent cause of action under Texas law" that allows recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Id.* at 338 (citing *Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).[9] Recent decisions of Texas federal courts have likewise found that Texas law recognizes unjust enrichment as an independent cause of action. *See, e.g.*, *Scott v. Wollney*, 2021 WL 4851852, at *4-5 (N.D. Tex. Sept. 10, 2021), *adopted by Scott v. Atlas Fin. Holdings, Inc.*, 2021 WL 4845779 (N.D. Tex. Oct. 18, 2021) ("Both the Texas Supreme Court and the Fifth Circuit have recognized claims for unjust enrichment as independent causes of action.") (citations omitted).[10]

---

[9] This is consistent with the recent holdings of the Texas courts of appeal. *See, e.g., Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 283 (Tex. App.—Tyler Aug. 30, 2021, pet. denied) (citations omitted).

[10] *See also Hays v. Frost & Sullivan, Inc.*, 2024 U.S. Dist. LEXIS 146902, at *38-39 (W.D. Tex. Aug. 16, 2024) ("[T]he Texas Supreme Court has repeatedly recognized and affirmed claims of unjust enrichment.").

**E.      The Texas Citizens Participation Act has no application to this case.**

Garcia concedes that the Fifth Circuit has held that the Texas Citizens Participation Act (the "TCPA") does not apply to diversity cases in federal court. (Dkt. 10, p. 31-32); *see also Klocke v. Watson*, 936 F.3d 240, 245-46 (5th Cir. 2019). He nevertheless invites the Court to ignore the Fifth Circuit's holding based solely on *his* interpretation of a subsequent amendment to the TCPA removing a requirement that grounds for dismissal be by a "preponderance of the evidence." (*See* Dkt. 10, p. 31-32.) As detailed below, the Court should decline this invitation.

First, in *Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 538-539 (W.D. Tex. 2021), the court rejected Garcia's exact argument. Parker filed a defamation claim based on statements made in a podcast. The defendants moved to dismiss on several grounds, including the TCPA, and argued that "the amendments to the statute made shortly after *Klocke* mean that it no longer prevents the application of the TCPA in this situation." *Id.* at 538. The *Parker* court disagreed and held that "[b]ased on this Court's reading of the *Klocke* reasoning, the Texas Legislature did not amend the chapter in a way that cured the issues with the overlap between 12(b)(6) dismissals and TCPA dismissals. As a result, this Court finds that the TCPA is not applicable to federal courts in diversity cases." *Id.* at 539 (citations omitted).

Second, even after the September 1, 2019 legislative change that Garcia points to, the Fifth Circuit and every federal district court in Texas—including this Court—have held that the TCPA does not apply in federal courts. *See, e.g.*, *Van Dyke v. Retzlaff*, 781 F. App'x 368, 368-69 (5th Cir. 2019) ("the TCPA does not apply to diversity cases in federal court") (citing *Klocke*, 936 F.3d at 242); *Le-Vel Brands, LLC*, 2019 WL 4735805, at *9 (N.D. Tex. Sept. 27, 2019) (Lindsay, J.) (discussing *Klocke* and holding that "the TCPA does not apply in this matter"); *Glob. Plasma Sols. Inc. v. D. Zine Partners LLC*, 2021 WL 12192074, at *3 n.1 (N.D. Tex. June 10, 2021) (same); *Dallas Police & Fire Pension Sys. v. Alexander*, 2021 WL 4260494, at *4 (E.D. Tex. Sept. 20,

2021) (same); *Hilton v. Nicole Prause & Liberos*, 2019 WL 11553493, at \*2-3 (W.D. Tex. Nov. 26, 2019) (same, and noting that *Klocke* has been affirmed several times), *adopted by* 2019 WL 11553490 (W.D. Tex. Dec. 11, 2019); *Lewis Bisgaard & Smith LLP v. Bitgood*, 2023 WL 2089248, at \*2 (S.D. Tex. Feb. 16, 2023) (same).

Garcia cites two decisions from the Ninth Circuit to argue that the California Anti-SLAPP statute is enforced in federal courts, so the TCPA should be also. Ignoring that those cases are not binding on this Court, the courts in the Fifth Circuit have expressly declined to follow *United States ex rel. Newsham v Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999)[11]. In *Jackson v. Pierre*, 2019 WL 2866839, at \*2-3 (M.D. La. July 2, 2019), the court expressed doubt about whether state anti-SLAPP laws are applicable in federal court, noting that the Fifth Circuit had yet to decide that issue. With the *Klocke* decision, the Fifth Circuit answered that question in the negative just a few weeks later.[12]

Garcia also cites *Clifford v. Trump*, 818 F. App'x 746 (9th Cir. 2020), in which the court approved application of the TCPA to dismiss a defamation claim. The *Clifford* court held that, although the Fifth Circuit in *Klocke* had recently determined that the TCPA does not apply in federal court, the California district court was "bound to follow our own precedent, which requires us to apply the TCPA." *Id.* at 747 (citation omitted). As addressed by the *Clifford* court, the binding precedent in this Circuit, i.e. *Klocke,* holds that the TCPA has no application in federal court.

---

[11] The *Newsham* case has also been criticized by other federal jurists in California. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 272 (9th Cir. 2013) (Kozinski, J. and Paez, J. concurring) ("I believe *Newsham* is wrong and should be reconsidered.").

[12] If the Court decides to depart from *Klocke*, Prime should be permitted to amend its Complaint.

**F.      Garcia's reliance on a video and documents beyond the complaint should be stricken.**

Garcia has relied upon an "apology" video[13] posted on TikTok, pleadings from other unrelated lawsuits, and a letter from Senator Chuck Schumer (Dkt. 10, p. 10 n.1; Dkt. 11, Ex. 1 at App. 1-20, Ex. 2 at App. 21-63, and Ex. 3 at App. 71-74), all of which should be stricken as outside the scope of the pleadings[14]. In determining a Rule 12(b)(6) motion, a court typically may **not** consider "evidence outside the complaint." *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (emphasis added). "[G]oing beyond the pleadings is otherwise error." *Id.* (citing *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014))[15]. Despite this well-established rule, Garcia attempts to introduce these additional items none of which is attached to, referred to, or even central to Prime's Complaint.

While incanting judicial notice in support of these additional submissions, Garcia distorts that standard by asking the Court to consider these materials for the "truth of the documents' contents." The Fifth Circuit routinely rejects this approach at the pleading stage. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) ("documents [judicially noticed] should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents"); *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 642 (S.D. Tex. 2003) (a court cannot consider government filings to prove facts at Rule 12(b)(6) stage; *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 477 (E.D. Tex.

---

[13] This "apology" does not erase Garcia's prior statements. Rather, it confirms that Garcia recognizes his statements were false, defamatory, and actionable.

[14] None of these documents proves Garcia's statements were true, or that he had any basis to make the statements. They are all hearsay allegations that Prime contests.

[15] In addition, Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Moreover, a court may use its inherent power to manage its docket by striking documents. *See Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 246 (N.D. Tex. Mar. 28, 2011), *aff'd*, 486 F. App'x 469 (5th Cir. 2012) ("Pursuant to the Court's inherent power to control its docket and prevent undue delay, Defendants Motion to Strike (doc. 283) is **GRANTED**.") (emphasis in original).

2021) ("Apple asks the Court to judicially notice the contents of the statements . . . . Thus, Apple misconstrues the difference between the existence of a document itself and the factual veracity of its contents.") (emphasis in original); *Miller v. Stroman*, 2020 WL 2494576, at *3 (W.D. Tex. May 14, 2020) (improper to "introduce disputed facts through judicial notice at the dismissal stage" through public exhibits "includ[ing] statements about highly disputed inferences"); *SB Int'l v. P.R. Jindal*, 2007 WL 1411042, at *2 (N.D. Tex. May 14, 2007) ("the court concludes that any 'facts' contained in the petitions, counterclaims, and motion [filed in other lawsuits] are subject to reasonable dispute and, therefore, not appropriate for judicial notice"); *cf. Anderson v. Dallas Cnty.*, 2007 WL 1148994, at *4 (N.D. Tex. Apr. 18, 2007) (rejecting plaintiff's request to take judicial notice of documents produced in another lawsuit reasoning "the myriad of 'facts' contained in these documents are neither generally known nor reasonably indisputable"). This Court should do the same.

## V.     CONCLUSION

In view of the foregoing, Prime respectfully submits that the Court should deny Garcia's Motion in its entirety.[16]

---

[16] Garcia seeks dismissal with prejudice but provides no basis for a prejudicial dismissal. In the unlikely event the Court decides dismissal is warranted, Prime requests leave to amend its complaint to address any deficiencies, including, for example, by providing additional details about the circumstances in which Garcia's defamatory statements were made. *See Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, 2020 WL 5500238, at *3 (N.D. Tex. Sept. 11, 2020) ("When a plaintiff's complaint fails to state a claim, a court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice.") (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)); *Chancey v. BASF*, 2023 WL 6598065, at *3 (5th Cir. Oct. 10, 2023) (per curiam) ("district courts must grant leave to amend 'freely' and must have a 'substantial reason' to deny a request for leave to amend") (citation omitted).

By: */s/Herbert H. Finn*
      Herbert H. Finn
      FinnH@gtlaw.com
      Illinois Bar No. 6205685
      Patrick J. Owens
      Patrick.Owens@gtlaw.com
      Illinois Bar No. 6346324
      77 W Wacker Dr. Suite 3100
      Chicago, IL 60601
      Tel: 312.456.8400
      Fax: 312.456.8435

      Daniel Elms
      Dan.Elms@gtlaw.com
      TX Bar No. 24002049
      2200 Ross Avenue Suite 5200
      Dallas, TX 75201
      Tel: 214.665.3600
      Fax: 214.665.3601

      Michael Burshteyn
      mburshteyn@gtlaw.com
      CA Bar No. 295320
      101 2nd Street, Ste. 2200
      San Francisco, CA, 94105-3668
      Tel: 415.590.5141
      Fax: 415.707.2010

      **ATTORNEYS FOR PLAINTIFF**
      **PRIME HYDRATION LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 16th day of September, 2024. Any other counsel of record will be served by facsimile transmission and first-class mail.

      */s/ Daniel Elms*
      Daniel Elms